360 So.2d 396 (1978)
Glen Lawrence MARTIN, Appellant,
v.
STATE of Florida, Appellee.
No. 48464.
Supreme Court of Florida.
June 2, 1978.
Rehearing Denied July 24, 1978.
Louis Ossinsky, Jr., of Ossinsky & Krol, Daytona Beach, Florida, for appellant.
Robert L. Shevin, Atty. Gen., and A.S. Johnston, Asst. Atty. Gen., Tallahassee, Florida, for appellee.
PER CURIAM.
We are reviewing by direct appeal[1] Glen Lawrence Martin's conviction for first degree murder and sentence of death imposed by the Circuit Court, Seventh Judicial Circuit, Volusia County. Appellant's conviction and sentence were received for violation of Section 782.04(1)(a), Florida Statutes, which defines, as one form of murder in the first degree and a capital felony:
"The unlawful killing of a human being ... which resulted from the unlawful distribution of heroin by a person 18 years of age or older when such drug is proven to be the proximate cause of the death of the user... ."
In relation to his conviction or sentence, Martin presents nine points on appeal, only one of which we address. We reverse and remand for a new trial because heroin obtained during a search which violated the Fourth Amendment to the U.S. Constitution[2] was admitted into evidence at trial.
*397 These are the pertinent facts. After drinking at a bar late on the night of August 2, 1974, Cindy Burgman and Terry C. Minton met Lacey Lee Roy Stilley, a heroin addict, to arrange a purchase of heroin. The two gave Stilley $80 and accompanied him to the parking lot of a church were Stilley departed and disappeared from their sight. Shortly thereafter Stilley returned with eight packets of what he told them was heroin. Neither Minton nor Burgman had any contact with the person from whom the packets were purchased. At an apartment occupied by Fred Miller and a juvenile girl, Stilley, Burgman and Minton agreed to inject contents of the packets. Stilley cautioned Minton that an injection of heroin could prove fatal since he had been drinking. Minton replied that he was an experienced heroin user. Shortly thereafter Minton was discovered unconscious and not breathing. Efforts to resuscitate him failed and within half an hour he was dead. The police were called and Stilley remained with the body until they arrived.
The following day Stilley told police that around noon that day he had made a purchase of heroin from Martin at the Holiday Inn, where Martin was employed as a laundry worker. Without a search warrant, Officer Willie Azama proceeded to the Holiday Inn where he spotted Martin near the laundry room. Although Martin did not exhibit suspicious behavior, Officer Azama interrupted him, searched him and discovered heroin in his possession and, with the fruits of the search in hand, arrested him.
Stilley and Martin were jointly indicted[3] for first degree murder. Stilley was permitted to plead guilty to a lesser crime in return for testimony that Martin sold him heroin used by Minton moments before death, thereby linking Martin to the murder.
Before trial a hearing on a motion to suppress introduction into evidence of the heroin seized at the Holiday Inn resulted in the motion being granted because the trial judge found the search unreasonable within the meaning of the Fourth Amendment. During trial, the State asked the judge to reconsider his ruling because of new evidence and case law that had not been before the court at the hearing. After argument of counsel the judge reversed his ruling[4] based on State v. Miller[5] and Cupp v. Murphy.[6] Our examination of the two cases leads us to believe neither supports the judge's decision to reverse his original ruling.
In State v. Miller the facts were these. Two State Highway Patrol Officers, parked in their patrol cars at night, observed suspicious maneuvering of a red truck around and in a site where a motel was under construction. After the truck left the site the officers followed and signaled to pull over to the side of the road. As they were questioning the occupants the officers noticed a roll of carpet in plain view in the back of the truck. While one trooper detained the occupants the other returned to the construction site to discover that the motel, carpeted in the same color as the carpet in the truck, was missing carpet in one room. He returned to the truck and arrested the occupants. The carpet was admitted into evidence at trial and the defendants were convicted. The District Court of Appeal, Fourth District, upheld the convictions despite the claim that the carpet should have been excluded from evidence. Certainly the court was correct. The detention of the truck's occupants was lawful because the troopers' observation of suspicious movement of the truck gave them probable cause to detain while they determined whether a crime had been committed. While next to the truck, where they had a right to be, the officers inadvertently *398 observed, in plain view, the carpet. This was enough to justify seizure of the carpet under "the plain view" doctrine.[7] Since the Fourth Amendment was not violated by seizure of the carpet, it was not subject to the Fourth Amendment exclusionary rule.
These are the facts in Cupp. Murphy, the husband of a woman who had been murdered by strangulation, voluntarily came to the police station for questioning. Although the police had probable cause to believe Murphy had committed the murder, they did not arrest him. As they were questioning Murphy the police noticed a dark spot on his finger and suspecting that it was dried blood they asked him if they could take a scraping of his fingernails. He refused and after rubbing his fingers behind his back put them in his pockets, making a metallic noise such as change or keys rattling which suggested destruction of any evidence of the crime that might be provided by fingernail scrapings. Over his protest, the police took fingernail scrapings without a warrant. Stressing that the evidence was not likely to remain long intact, the court upheld the warrantless search and seizure as reasonable because of the existence of probable cause, and the limited intrusion incident to the detention, as well as the destruction of the evidence ongoing at the time of the search.
The case before us does not involve the "plain view" doctrine, nor did the police have reason to believe evidence was likely to be destroyed before a warrant could be obtained. Therefore, neither Miller nor Cupp lend it their support.
It is apparent from Officer Azama's testimony at the suppression hearing and at trial that, while he may have believed he had probable cause[8] to arrest, his motive in detaining Martin at the Holiday Inn was not to arrest but to search:
"Q. Why didn't you just arrest him?
"A. I needed the evidence.
"Q. You needed the evidence so the search was made for the purpose of getting the evidence. Is that your testimony?
"A. I needed the evidence to arrest him, yes.
"Q. And you didn't feel you had that evidence until you made the search.
"A. After I made the search, yes.
"Q. I said before you made the search you didn't feel you had the evidence, so you had to arrest him following the search in order to get the evidence. Is that what you are telling me?
"A. I didn't understand that question.
"Q. You didn't think you had the evidence for making the arrest, so you searched him to find the evidence so you could make an arrest.
"A. Yes, sir."
Searches without warrants are unreasonable under the Fourth Amendment unless justified by one of the exceptions to the rule. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). None of the exceptions apply. Appellant did not consent to the search, nor were the police in hot pursuit or conducting a stop and frisk. The search was not incident to a lawful arrest; it preceded the arrest and in the arresting officer's mind the fruits of the search were the justification for the arrest. Probable cause to search, plus an emergency which makes it impracticable to obtain a warrant will justify a warrantless search. The issue of probable cause aside, there was no such exigency. Martin was neither in flight or in a moving vehicle, nor was he about to destroy *399 evidence or remove contraband. He was at work and there was no information he was likely to leave. The police had every opportunity to obtain a warrant.
This case should point out the dangers in warrantless searches. If law enforcement officers, without justification for the lack of a magistrate's protective interposition, are permitted to search a person implicated by a heroin addict for a crime in which the addict is a suspect, then no citizen is free from searches condemned by the Fourth Amendment.
The admission at trial of evidence seized in a search in violation of the Fourth Amendment requires reversal of appellant's conviction and remand for new trial.
It is so ordered.
BOYD, SUNDBERG, HATCHETT and ALDERMAN, JJ., concur.
OVERTON, C.J., and ADKINS and ENGLAND, JJ., dissent.
NOTES
[1] Art. V, § 3(b)(1), Fla. Const.
[2] "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."
[3] Martin was charged with possession of heroin on May 23, 1975 by the same indictment. He pleaded guilty to possession and was adjudicated guilty.
[4] The heroin was subsequently admitted into evidence.
[5] 267 So.2d 352 (Fla. 4th DCA 1972).
[6] 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973).
[7] State v. Parnell, 221 So.2d 129 (Fla. 1969).
[8] For hearsay to support a finding of probable cause, the police must have reason to believe the informant was credible or his information reliable. See Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). We can understand well the officer's hesitancy to arrest Martin on Stilley's information alone, given both Stilley's reputation as a heroin addict and circumstances surrounding Minton's death which likely would result in a charge of murder against Stilley unless he could implicate someone "higher up" in the chain of heroin distribution.