402 So.2d 402 (1981)
Sheila Mathews WELLS, Appellant,
v.
STATE of Florida, Appellee.
No. 57058.
Supreme Court of Florida.
July 30, 1981.
*403 Gary R. Dunham, Asst. Public Defender, Starke, for appellant.
Jim Smith, Atty. Gen., and A.S. Johnston, Asst. Atty. Gen., Tallahassee, for appellee.
ALDERMAN, Justice.
Sheila Wells challenges her convictions for unlawful possession of a controlled substance, possession of narcotics paraphernalia, and introducing contraband into a state prison, on the basis that the trial court erred in denying her motion to suppress contraband seized from her while a visitor at the state prison Lake Butler Reception and Medical Center and on the basis that the trial court erred in denying her motion to dismiss the charge that she violated section 944.47, Florida Statutes (Supp. 1978), by introducing contraband into a state prison. We have jurisdiction pursuant to article V, section 3(b)(1), Florida Constitution (1972), because the trial court upheld the constitutional validity of section 944.47.[1] We hold that the trial court correctly denied the motion to suppress since the search and seizure was not illegal, and we hold that *404 section 944.47 is not unconstitutionally vague as applied to Wells and is not an unlawful delegation of legislative powers and that she has no standing to challenge this statute as overbroad.
Several days prior to Sheila Wells' arrest, a correctional officer and investigator, Sergeant Deckle, employed at the state prison Lake Butler Reception and Medical Center, received confidential information from a reliable source that on October 1, 1978, Wells would bring marijuana into the facility hidden inside her vagina. Sergeant Deckle planned with a female correctional officer, Virginia Forsythe, to allow Wells to enter the prison and only stop her after she exited from the visitor's restroom where, they anticipated, she would remove the contraband to facilitate passage to an inmate.
Wells entered the state prison on October 1, 1978, and after about one hour in the visitor's area, she entered the visitor's restroom. When she emerged, Officer Forsythe asked Wells to accompany her to an office. Forsythe instructed Wells to remove her clothing, and she complied. A pat-down search of her upper torso revealed vegetable matter appearing to be marijuana enclosed in a plastic baggie inside a prophylactic. After she dressed, she was arrested by a deputy sheriff. Her purse was searched, and hemostats and "roach clips" were found. With Wells' consent, her car was also searched, and two more "roach clips" were found.
Although conceding that the prison authorities had probable cause to believe that she would attempt to smuggle contraband into the prison facilities, Wells argues that this warrantless search violated her constitutional right to be free from unreasonable searches and seizures under the fourth amendment to the constitution of the United States and article I, section 12 of the Florida Constitution, since no exigent circumstances were present.
As a predicate to her claim that her fourth amendment rights were violated, Wells must first establish that she had a reasonable expectation of privacy to be free from the particular intrusion involved here. Smith v. Maryland, 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d at 220 (1979); Rakas v. Illinois, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); Shapiro v. State, 390 So.2d 344 (Fla.), cert. denied, ___ U.S. ___, 101 S.Ct. 1519, 67 L.Ed.2d 818 (1980). In determining whether she demonstrated a reasonable expectation of privacy, we are concerned not merely with what her own personal expectation of privacy was, but, more importantly, we are concerned with what expectations are constitutionally justifiable so as to implicate the fourth amendment. United States v. White, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971). To make this determination, we must decide whether her individual subjective expectation is one that society is prepared to recognize as reasonable under the circumstances. Smith v. Maryland; Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); Shapiro v. State. Although the fourth amendment protects people and not places, reference to the place where the right is being asserted is essential to the application of the objective standard for determining reasonableness of the expectation of privacy. Katz v. United States, 389 U.S. at 361, 88 S.Ct. at 516 (Harlan, J., concurring).
It is doubtful that most visitors to a prison have any subjective expectation that they will not be searched for weapons or other contraband. It should be obvious to any reasonable person that for the protection of both the guards and the inmates, as well as any visitors, prison personnel must do whatever is necessary to prevent the introduction of contraband into the prison. As acknowledged by the Supreme Court of the United States in Bell v. Wolfish, 441 U.S. 520, 559, 99 S.Ct. 1861, 1884, 60 L.Ed.2d 447 (1979), "A detention facility is a unique place fraught with serious security dangers. Smuggling of money, drugs, weapons, and other contraband is all too common an occurrence."
Even if Wells did have a subjective expectation of privacy, her expectation, to be free from the particular search involved here, is not one that society is prepared to *405 recognize as reasonable. Discussing privacy expectations in a prison environment, the Supreme Court of the United States, in Lanza v. New York, 370 U.S. 139, 82 S.Ct. 1218, 8 L.Ed.2d 384 (1962), said:
[T]o say that a public jail is the equivalent of a man's "house" or that it is a place where he can claim constitutional immunity from search or seizure of his person, his papers, or his effects, is at best a novel argument. To be sure, the Court has been far from niggardly in construing the physical scope of Fourth Amendment protection. A business office is a protected area, and so may be a store. A hotel room, in the eyes of the Fourth Amendment, may become a person's "house," and so, of course, may an apartment. An automobile may not be unreasonably searched. Neither may an occupied taxicab. Yet, without attempting either to define or to predict the ultimate scope of Fourth Amendment protection, it is obvious that a jail shares none of the attributes of privacy of a home, an automobile, an office, or a hotel room. In prison, official surveillance has traditionally been the order of the day.
370 U.S. at 143, 82 S.Ct. at 1220-1221 (footnotes omitted). See United States v. Kelley, 393 F. Supp. 755 (W.D.Okl. 1975).
Wells established no reasonable expectation of privacy from the particular search of her person which was conducted, in this case, for the limited purpose of discovering whether she was carrying contraband into the prison. Therefore, the fourth amendment was not implicated, and neither probable cause nor a warrant was required as a prerequisite to the search. See Shapiro v. State. Furthermore, we find that the manner of conducting the search was not patently offensive to human dignity so as to shock the conscience or offend even hardened sensibilities and thus partook of none of the abusive characteristics held to violate the due process clause. United States v. Robinson, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973); Schmerber v. California, 384 U.S. 757, 85 S.Ct. 1826, 16 L.Ed.2d 908 (1966); Rochin v. California, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1951). Therefore, we hold that the trial court's denial of her motion to suppress was proper.
We next proceed to Wells' challenges to the constitutionality of section 944.47 on the grounds that it is vague, overbroad, and an unlawful delegation of legislative authority. This statute provides in pertinent part:
Introduction or removal of certain articles unlawful; penalty. 
(1)(a) It is unlawful to introduce into or upon the grounds of any correctional or penal institution under the supervision or control of the Department of Offender Rehabilitation, or to take or attempt to take or send therefrom, any of the following articles which are hereby declared to be contraband for the purposes of this section, to wit:
... .
4. Any narcotic or hypnotic or excitative drug or any drug of whatever kind or nature including, but not limited to, nasal inhalators of any variety, sleeping pills, barbiturates of any variety, and any controlled substance as defined in s. 893.02(3);
... .
except through regular channels as authorized by the officer in charge of each correctional or penal institution.
... .
(2) Whoever violates any provision of this section shall be guilty of a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
Wells does not have standing to challenge as vague subsections of section 944.47 under which she was not charged since she is unaffected by these subsections. State v. Champe, 373 So.2d 874 (Fla. 1978). Furthermore, she has no standing to challenge section 944.47 as overbroad. Clark v. State, 395 So.2d 525 (Fla. 1981). Her conduct was clearly illegal and proscribed by section 944.47 in understandable terms, and she has made no assertion that the statute inhibits activities protected by the first amendment.
We have previously held that section 944.47 is not an unlawful delegation of legislative powers. In Clark v. State, we said:

*406 The "reasonableness" of delegation must be determined within the practical context of the problem. State v. Griffin, 239 So.2d 577 (Fla. 1970). In Griffin this Court recognized that where direct legislative supervision is impractical, detailed legislation may also be impractical. A prison, unlike most regulated agencies and departments, cannot be run by procedures carefully detailed by "outsiders."
The realities of running a penal institution are complex and difficult, so wideranging deference is to be accorded the decisions of prison administrators. Jones v. North Carolina Prisoners' Union, 433 U.S. 119, [97 S.Ct. 2532, 53 L.Ed.2d 629] (1977)... .
Of course, the legislature must establish guidelines to prevent abuse of administrative power. State v. Cumming, 365 So.2d 153 (Fla. 1978); Conner v. Joe Hatton, Inc., 216 So.2d 209 (Fla. 1965); State ex rel. Davis v. Fowler, 94 Fla. 752, 114 So. 435 (1927). The legislature mandated that the "officer in charge of such institution" is the person qualified to designate the "regular channels" of entry to the prison. The prison administrator can allow many things to pass in through those channels. However, items of contraband were outlined by the legislature. The prison administrator must keep out items within that outline which, based on his experience in the prison system, are potentially harmful.
395 So.2d at 527-28.
Finally, we reject Wells' contention that section 944.47 is unconstitutionally vague as applied to her. This statute conveys a sufficiently definite warning of the proscribed conduct when measured by common understanding and practice. Schultz v. State, 361 So.2d 416 (Fla. 1978). A statute, to be sufficiently certain so as to accord with constitutional standards of due process, need not furnish detailed plans and specifications of the acts or conduct prohibited since impossible standards are not required. Orlando Sports Stadium, Inc. v. State ex rel. Powell, 262 So.2d 881 (Fla. 1972).
Wells' concerted effort at concealing the marijuana belies any assertion that she did not know that her conduct of introducing the marijuana into the prison was illegal. To perceive that smuggling drugs into a prison is prohibited activity requires only a minimum of common understanding. As applied to Wells' conduct, section 944.47 gave fair notice that her particular behavior was illegal.
Accordingly, having found that the trial court properly denied the motions to suppress and to dismiss, we affirm the convictions.
It is so ordered.
BOYD, OVERTON and McDONALD, JJ., concur.
SUNDBERG, C.J., concurs specially with an opinion with which ENGLAND, J., concurs.
ADKINS, J., dissents with an opinion.
SUNDBERG, Chief Justice, concurring specially.
Although I agree that under these circumstances the search of Wells should be upheld, I reach that conclusion by a significantly different road and, therefore, must voice what I feel is the correct means to the same end. I concur with the majority's disposition of the other constitutional challenges.
The majority adopts the minority and waning position in this country which holds that there are simply no fourth amendment rights whatsoever in a prison environment.[1] *407 See United States v. Hitchcock, 467 F.2d 1107 (9th Cir.1972), cert. denied, 410 U.S. 916, 93 S.Ct. 973, 35 L.Ed.2d 279 (1973) (no reasonable expectation of privacy in jail cell); United States v. Myers, 431 F. Supp. 64 (W.D.Okla. 1976) (prison not a protected area under fourth amendment); Hoitt v. Vitek, 361 F. Supp. 1238 (D.N.H. 1973), aff'd, 495 F.2d 219 (1st Cir.1974) (cell-block not constitutionally protected); South Carolina v. Colby, 263 S.C. 468, 210 S.E.2d 914 (1975) (visitor to prison compound has no expectation of privacy).[2] A growing number of courts refuse to find a complete lack of fourth amendment protection in the prison situation. Notably, the United States Fifth Circuit Court of Appeals has found that the potential for abusive searches of prisoners demands at least some fourth amendment protection. United States v. Lilly, 576 F.2d 1240 (5th Cir.1978). That court found the fourth amendment mandated that searches and seizures conducted on prisoners must be "reasonable under all the facts and circumstances in which they are performed." Id. at 1244. The seventh circuit has held that entry into a controlled environment does not lead to total loss of privacy, but that some residuum meriting fourth amendment protection survives even in this environment. Bonner v. Coughlin, 517 F.2d 1311, 1316 (7th Cir.1975), cert. denied, 435 U.S. 932, 98 S.Ct. 1507, 55 L.Ed.2d 529 (1978) (Stevens, J.). Cases generally following this view are legion. See, e.g., United States v. Stumes, 549 F.2d 831 (8th Cir.1977); United States v. Savage, 482 F.2d 1371 (9th Cir.1973), cert. denied, 415 U.S. 932, 94 S.Ct. 1446, 39 L.Ed.2d 491 (1974); Daughtery v. Harris, 476 F.2d 292 (10th Cir.), cert. denied, 414 U.S. 872, 94 S.Ct. 112, 38 L.Ed.2d 91 (1973); Hodges v. Klein, 412 F. Supp. 896 (D.N.J. 1976); Hudson v. Colorado, 196 Colo. 211, 585 P.2d 580 (1978); Michigan v. Trudeau, 385 Mich. 276, 187 N.W.2d 890 (1971), cert. denied, 405 U.S. 965, 92 S.Ct. 1169, 31 L.Ed.2d 240 (1972). I adopt the growing and, I believe, enlightened view that when an individual crosses into a prison environment he does not enter a twilight zone devoid of every constitutional protection afforded to all persons, and that the inhabitants of this environment are indeed still to be treated as "persons."
Although the majority quotes the familiar passage from Lanza v. New York, 370 U.S. 139, 82 S.Ct. 1218, 8 L.Ed.2d 384 (1962), to support its position that the fourth amendment is inapplicable in prisons, this language is mere dicta and the issue before this Court has never been decided by the United States Supreme Court. But the Supreme Court has made clear in the "iron curtain" passage from Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), that constitutional rights flourish even within a prison's four gray walls:
If the position implies that prisoners in state institutions are wholly without the protections of the Constitution and the Due Process Clause, it is plainly untenable. Lawful imprisonment necessarily makes unavailable many rights and privileges of the ordinary citizen, a "retraction justified by the considerations underlying our penal system." But though his rights may be diminished by the needs and exigencies *408 of the institutional environment, a prisoner is not wholly stripped of constitutional protections when he is imprisoned for crime. There is no iron curtain drawn between the Constitution and the prisons of this country.
Id. at 555-56, 94 S.Ct. at 2974-2975 (citation omitted). Prison security is invoked by the majority and Lanza as justifying abrogation of the normal constitutional safeguards, yet "the shibboleth of jail security is not a passport to wholesale abuse of ... constitutional rights."[3] The majority also posits, based on Lanza, that a prison visitor can have no reasonable expectation of privacy since "official surveillance has traditionally been the order of the day."[4] But such reasoning is circular, for this would allow the government to negate fourth amendment protection by merely announcing and instituting surveillance in any particular situation.[5] I cannot accept that fourth amendment rights are so evanescent.
Notably, the majority is uneasy in stripping away all limitations on prison searches and falls back on a due process limitation established in Rochin v. California, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952), which declared that a forced stomach pumping to obtain evidence violated due process as being "too close to the rack and the screw." Id. at 172, 72 S.Ct. at 209-210. But the privacy rights of Rochin could not be protected under the more suitable fourth amendment since the case involved a state prosecution and was prior to Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), which made the practical protections of the fourth amendment applicable to the states. The protection in Rochin has become superseded by the fourth amendment and has ceased to develop. Furthermore, the scope of due process protection from unreasonable search is ill-developed. Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), may overrule Rochin since Schmerber upheld an intrusion into the defendant's body to obtain evidence. Both cases are concerned with intrusions into the body, a situation not involved in the present case, and are of questionable utility. Another case cited for reliance on due process protection, United States v. Robinson, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973), was severely undermined by United States v. Chadwick, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977). All cases the majority cites involve post-arrest searches, again not the case we face. Ironically, the Supreme Court in Robinson found the fourth amendment applicable to a search incident to arrest and held the particular search reasonable. The Court in Schmerber also applied the reasonableness clause of the fourth amendment to a post arrest search. 384 U.S. at 771, 86 S.Ct. at 1836. What emerges outside the fourth amendment is a very pale Rochin protection, which seems only to prevent a few searches when the court's "sense of justice" is shocked, a protection which is certainly not vital and perhaps not valid.
The differences between fourth amendment protections from unreasonable searches and those afforded by due process of law are critical:
Thus, we must apply the test of reasonableness to the conduct of the officers in the case at bar. This is a stricter test tha[n] that applied to state proceedings under the Due Process Clause of the Fourteenth Amendment in Rochin and Breithaupt. The test there is whether the alleged activity of law enforcement officers in obtaining the questioned evidence fell short of civilized standards of decency and fair play. There may be, we conceive, conduct which, while unreasonable, is not so unconscionable that it "shocks the conscience" or "offend[s] a sense of justice." Rochin, 342 U.S. at page 172, 72 S.Ct. at page 208. On the other hand, if conduct is reasonable, it must perforce satisfy Due Process requirements.
*409 Blackford v. United States, 247 F.2d 745, 750 (9th Cir.1957), cert. denied, 356 U.S. 914, 78 S.Ct. 672, 2 L.Ed.2d 586 (1958) (footnotes omitted). This passage points out that "reasonableness" is a term of fourth amendment art, and not one of due process methodology. Due process protections in this context are the minimum standards that apply for humane treatment of animals. In contradistinction, fourth amendment protections are minimum standards that define civilized treatment of other human beings. To deny persons in a prison environment all fourth amendment rights is to deny them the quality of humanity. Such a denial continues a medieval approach towards penal institutions:
Our prisons are institutions which strive to dehumanize... . We expose the inmate to indignities and invasions of privacy which, if they occurred in the "outside" world, would bring immediate howls of protest. Of course, there are legitimate security needs of the prisons, and these must be considered when weighing the prisoner's rights of integrity, autonomy, privacy. But our prisons are not meant for security: their chief purpose is, and should be, rehabilitation. It is impossible to rehabilitate a man when everything around him tells him, repeatedly, that he is not a man, that he has no humanity.[6]
To disallow any privacy under fourth amendment protection is to accept and perpetuate that the prison environment is and will be a place of inhumans, and to guarantee that those exposed for a sufficient length of time will have no hope of ever regaining humanity.
Even though I would apply the reasonableness standard of the fourth amendment for the reasons I have outlined, I nevertheless would uphold the search of Wells.[7] The government's special interest in maintaining order and security in prison must be balanced against the individual's right to personal security. See Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Camara v. Municipal Court, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967).[8] The right of Wells to be free from a search even when probable cause existed cannot outweigh the public interest in preventing introduction of drugs into a prison. The pat-down search of Wells under the circumstances of this case could in no way be called unreasonable.
I thus reach the same conclusion as the majority, and uphold the search. But I would analyze the problem in terms of fourth amendment reasonableness, and, as often is the case, the manner in reaching an end can be more critical than the end itself.
ENGLAND, J., concurs.
ADKINS, Justice, dissenting.
I dissent. Facts stipulated to in the motion to suppress show that the warrantless search of appellant was based on a tip from a reliable informant. Appellant agrees that probable cause to search attached at that time. However, she maintains that probable cause is not sufficient without exigent circumstances to call for a warrantless search, so the search did not meet an exception to the warrant requirement. The burden was on the state to show that the search met an exception. The state urges that the requisite exigent circumstances are supplied by the prison environment and resultant decreased expectation of privacy. Under the particular facts that were before the trial court in appellant's motion, circumstances did not require a warrantless search even inside the prison.
*410 A warrantless search is per se unreasonable unless the search falls within certain well-defined exceptions. Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967); Martin v. State, 360 So.2d 396 (Fla. 1978). An emergency situation may require a warrantless search if probable cause and exigent circumstances exist; both parties agree that probable cause existed in this case. Appellee claims that probable cause is enough where the search was in a prison. Florida courts hold that search and surveillance necessary for prison security must qualify a prisoner's expectation of privacy. Marra v. State, 341 So.2d 284 (Fla. 1st DCA 1977). Prisoners can be subjected to very invasive searches if the search is "reasonable", even absent probable cause, without violating their Fourth Amendment rights. United States v. Lilly, 576 F.2d 1240 (5th Cir.1978) (body cavity search allowed due to exigencies inherent in prison environment). Officials searching for contraband in some penal institutions may conduct pat-down searches of guards. United States v. Sihler, 562 F.2d 349 (5th Cir.1977). Officials may also search other prison employees. Shaw v. Hutto, (E.D.Va. 1977), 22 Cr.L. 2021. In Davis v. Reynolds, 319 F. Supp. 20 (N.D.Fla. 1970), where wildlife officers conducted a warrantless search of vehicle in a game preserve, the district court held broadly that a warrantless search is proper in order to maintain security or to prevent entry of forbidden articles into a designated area. However, no seizure was involved in Davis.
Section 944.47, Florida Statutes (1978), allows prison administrators wide discretion to detect contraband and to keep it out of the institutions. Here, however, officials knew beforehand that appellant would attempt to introduce contraband into the prison. Officers could have taken action before appellant entered because the informant's tip revealed that she was already committing a felony by possessing marijuana in violation of section 893.023, Florida Statutes (1977). In the alternative, officials could have kept the contraband out of the institution by merely refusing to admit appellant.
Since prison officials received the tip from a proven reliable source several days before appellant was to enter the prison, they should have obtained a warrant to search her. Fourth Amendment rights must be protected unless there is a compelling justification for infringing on those rights. Although appellant entered a prison, the time span between when probable cause to search arose and when appellant was finally searched was too wide to constitute exigent circumstances under Florida law. In Hornblower v. State, this Court held that "[l]aw enforcement officers may not sit and wait as here (when they could be seeking a warrant), then utilize their self-imposed delay to create exigent circumstances." 351 So.2d 716, 719 (Fla. 1977) (Police knew for forty-five minutes that they were going back to defendant's house to search people leaving for contraband.) Similarly, in Parsons v. State, 334 So.2d 308 (Fla. 1st DCA 1976), aff'd 351 So.2d 723 (1977), the police officer waited one and one-half hours between first suspecting the defendant was smoking marijuana and then making a warrantless arrest. This Court affirmed the decision that the interval between suspicion and arrest was too long to justify not obtaining a warrant.
In this case, prison officers had "several days" to obtain a warrant, but there is no evidence that they even considered getting one. Regardless, they planned exactly how and where they would stop appellant and search her. They knew days ahead of time what she would bring in, where she would hide it, and when she would bring it into the prison. These circumstances fall far short of the required exigency, within or without a prison.
The initial search of this appellant did not come within the consent exception to the warrant rule. The state claimed that the Visiting Park Regulations, State Exhibit 1, were given to every visitor and described which items cannot be brought into a prison. The Regulations, relating more to conduct, describe only postage stamps, money in excess of $15.00, and cigarettes as items which cannot be received from visitors. *411 Confiscation of items is the only penalty noted. The rules of the Department of Offender Rehabilitation pertaining to visitors warn that "they may be required to submit to a search of their persons and possessions before being admitted." Department of Offender Rehabilitation Rules, S. 33.508(1) (emphasis supplied). Appellant was not searched before she was admitted; indeed, it was an hour after she entered the prison before Officer Forsythe approached her. I cannot ignore the last three words of the rule.
The subsequent searches of appellant's purse and her car are also suspect in light of the initial illegal search. When an initial search is illegal, further searches evolving from that initial search are also illegal. Norman v. State, 379 So.2d 643 (Fla. 1980). The state must show an unequivocal break in the chain of illegality to dissipate the taint. Bailey v. State, 319 So.2d 22 at 28 (Fla. 1975).
In my opinion the trial court erred in denying appellant's motion to suppress evidence.
NOTES
[1] Appellant entered a plea of nolo contendere, reserving the right to appeal the denial of her motion to suppress evidence and her motion to dismiss the charge of introducing contraband.
[1] This environment includes visitors, guards, pretrial detainees, and inmates. Though the majority cites cases which include the first three groups, it is careful in its pretense that the prison environment does not implicate the very core of a prison, the inmates. But its decision necessarily involves the rights of all those functioning within prisons. Thus, for purposes of my analysis, all inhabitants of the prison environment will be treated similarly since the cases which address the rights of groups such as prison guards, visitors, or inmates unanimously refer to the diminished expectation of privacy afforded in the prison environment to all, and do not distinguish between these groups. See United States v. York, 578 F.2d 1036 (5th Cir.), cert. denied, 439 U.S. 1005, 99 S.Ct. 619, 58 L.Ed.2d 682 (1978) (no distinction between visitor and inmate); United States v. Hearst, 563 F.2d 1331, 1345 n. 11 (9th Cir.1977), cert. denied, 435 U.S. 1000, 98 S.Ct. 1656, 56 L.Ed.2d 90 (1978) (no distinction between pretrial detainee and inmate); Gettleman v. Werner, 377 F. Supp. 445, 451 (W.D.Pa. 1974) (no distinction between prison guard and inmate).
[2] Many cases exhibit a reluctance to abandon a reasonableness requirement although at the same time declaring no fourth amendment protection exists in a prison environment. See, e.g., United States v. Kelley, 393 F. Supp. 755 (W.D.Okla. 1975); Gettleman v. Werner, 377 F. Supp. 445 (W.D.Pa. 1974); Massachusetts v. DiMarzo, 364 Mass. 669, 308 N.E.2d 538 (1974); Robinson v. Mississippi, 312 So.2d 15 (Miss. 1975). California has also demonstrated an ambivalent attitude towards this issue, but in another manner. Compare California v. Lopez, 60 Cal.2d 223, 384 P.2d 16, 32 Cal. Rptr. 424 (1963), cert. denied, 375 U.S. 994, 84 S.Ct. 634, 11 L.Ed.2d 480 (1964), with North v. Superior Court, 8 Cal.3d 301, 502 P.2d 1305, 104 Cal. Rptr. 833 (1972), and In re Long, 55 Cal. App.3d 788, 127 Cal. Rptr. 732 (3d Dist. 1976).
[3] State v. Ellefson, 266 S.C. 494, 500, 224 S.E.2d 666, 669 (1976).
[4] Lanza v. New York, 370 U.S. 139, 143, 82 S.Ct. 1218, 1220, 8 L.Ed.2d 384 (1962).
[5] See Robson, The Fourth Amendment Behind Bars: Search and Seizure in Prisons, 5 Nat'l J. Crim. Def. 259, 263 (1979).
[6] Singer, Privacy, Autonomy, and Dignity in the Prison: A Preliminary Inquiry Concerning Constitutional Aspects of the Degradation Process in Our Prisons, 21 Buff. L. Rev. 669, 715 (1972).
[7] The warrant clause and traditional probable cause, however, generally need not be satisfied in a prison setting due to the exigencies of prison security. See Newman v. Alabama, 559 F.2d 283 (5th Cir.1977); United States v. Myers, 431 F. Supp. 64, 66 (W.D.Okla. 1976); Black v. Amico, 387 F. Supp. 88 (W.D.N.Y. 1974).
[8] See also 3 W. LaFave, Search and Seizure § 10.9 (1978).