DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**KENNETH ISAAC PARKERSON,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D13-1279

[April 29, 2015]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Bernard I. Bober, Judge; L.T. Case Nos. 10-008556CF10A and 11-015806CF10A.

Carey Haughwout, Public Defender, and Zainabu Rumala and Jeffrey L. Anderson, Assistant Public Defenders, West Palm Beach, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Jeanine Germanowicz, Assistant Attorney General, West Palm Beach, for appellee.

GERBER, J.

The defendant appeals from his convictions and sentences for separate cases of: (1) burglary of a dwelling with intent to commit video voyeurism; and (2) voyeurism and burglary of an occupied dwelling with intent to commit voyeurism. He primarily argues that we should overturn his convictions because the statutes prohibiting voyeurism and video voyeurism are facially overbroad. We conclude as a matter of first impression that the statutes are not facially overbroad and thus are constitutional. Therefore, we affirm the defendant's convictions. On other grounds argued, we reverse the denial of the defendant's motion to correct sentencing error and remand for correction of the defendant's sentences.

In the defendant's first case, he was seen watching a husband and wife from the back patio of their home. When the defendant was caught moments later, he had with him a camera which he tried to smash against the ground. The state charged the defendant with burglary of a dwelling with intent to commit video voyeurism, and tampering with evidence.

In the defendant's second case, a woman was in her bathroom getting ready to shower when she turned around and saw the defendant on her back patio watching her. After the police arrested the defendant a few days later, the state charged the defendant with voyeurism and burglary of an occupied dwelling with intent to commit voyeurism.

In both cases, the defendant pled no contest to the charges without reserving his right to appeal.

In a motion for downward departure, the defendant asserted that, pursuant to section 921.0026(2)(d), Florida Statutes (2013), he required "specialized treatment for a mental disorder that [was] unrelated to substance abuse or addiction or for a physical disability, and [that he was] amenable to treatment." The state opposed the downward departure motion.

The circuit court denied the downward departure motion and adjudicated the defendant guilty on all charges. The court stated:

> While I do find that the defendant does require specialized treatment for a major mental disorder, I do have questions or doubts about his amenability to treatment based upon his past history including his past failures to comply with the taking of medication, and receive treatment in the past albeit it was a conventional psychologist as opposed to a sex offender program.

> But in any event, I do find that based upon the totality of the facts, the harm that he has caused to his victims, and his history of continual troubles of the same nature; in particular while he was out on bond on one case, he committed the same type of act whereby his own admission he just could not resist his impulses.

> And based upon the totality of the circumstances I do not feel a downward departure is warranted even if I were to find that he qualified for downward departure which I do not find that.

On both cases' burglary charges, the court sentenced the defendant to eight years in prison, followed by two years of community control and five years of probation, all to run concurrently. On the tampering with evidence charge in the first case, the court sentenced the defendant to five years in prison, to run concurrently with the eight-year sentence. On the

voyeurism charge in the second case, the court sentenced the defendant to time served.

On the sentences' community control and probation terms, the court pronounced that the defendant be subject to the following special conditions: GPS monitoring; a psychosexual evaluation; counseling at a sex offender program at a minimum of once per week; psychiatric visits at least once per month; provision of copies of all medications and prescriptions to his probation officer; compliance with all medications and prescriptions; random urine testing; polygraph examinations four times a year; no victim contact; remaining at least 500 feet away from the victims and their homes; and payment of all mandatory court costs except supervision costs. The court noted that it was not designating the defendant as a sex offender.

However, the written orders of community control and probation checked off the following pre-printed "Special Conditions": undergo a psycho-sexual evaluation, and if treatment is deemed necessary, successfully complete treatment; sex offender counseling once per week; random urinalysis for alcohol or illegal drugs; no contact with the victim or victims' family, and electronic monitoring. Handwritten in as other "Special Conditions" were the following: "GPS monitor on CC, take Rx meds, psychiatrist 1 time per month"; "*sex offender conditions apply*"; and "subjected to polygraph four (4) times per year" (emphasis added).

The defendant appealed his convictions and sentences. While his appeal was pending, he filed a Florida Rule of Criminal Procedure 3.800(b)(2) motion to correct sentencing error. *See* Fla. R. Crim. P. 3.800(b)(2) (2013) ("If an appeal is pending, a defendant or the state may file in the trial court a motion to correct a sentencing error."). The motion alleged that the orders of community control and probation contained the handwritten notation "sex offender conditions apply" which the court did not orally pronounce at sentencing. The court denied the defendant's motion. The defendant also has appealed from the denial of that motion.

The defendant primarily argues that we should overturn his convictions because the statutes prohibiting voyeurism and video voyeurism are facially overbroad. The defendant also argues that the circuit court erred in denying his motion to correct sentencing error because the orders of community control and probation included the handwritten notation "sex offender conditions apply" which the court did not orally pronounce at sentencing.

3

We initially address the standard of review of an unpreserved facial challenge for overbreadth. We then address separately the defendant's facial challenge to the video voyeurism statute and his facial challenge to the voyeurism statute. We conclude by addressing the defendant's motion to correct sentencing error.

*Standard of Review of an Unpreserved Facial Challenge for Overbreadth*

A defendant who pleads no contest to a violation of a statute without reserving the right to appeal has waived the right to challenge the statute's constitutionality on appeal. *Rodriquez v. State*, 591 So. 2d 211, 211-12 (Fla. 4th DCA 1991). However, "[a] facial challenge to a statute's constitutional validity may be raised for the first time on appeal . . . if the error is fundamental." *State v. Johnson,* 616 So. 2d 1, 3 (Fla. 1993) (citations omitted). "The application of an unconstitutional statute constitutes fundamental error, whereas unconstitutional application of an otherwise constitutional statute does not." *Emiddio v. Fla. Office of Fin. Regulation,* 147 So. 3d 587, 592 (Fla. 4th DCA 2014) (citation and quotation marks omitted). Thus, we are required to examine the constitutionality of the statutes at issue here.

"A court's decision regarding the constitutionality of a statute is reviewed de novo as it presents a pure question of law. There is a strong presumption that a statute is constitutionally valid, and all reasonable doubts about the statute's validity must be resolved in favor of constitutionality." *State v. Catalano,* 104 So. 3d 1069, 1075 (Fla. 2012) (citations omitted). "As a result, the party challenging the constitutionality of a statute bears a heavy burden of establishing its invalidity." *Montgomery v. State,* 69 So. 3d 1023, 1026 (Fla. 5th DCA 2011) (citation omitted).

"The overbreadth doctrine applies when legislation criminalizes constitutionally protected activities along with unprotected activities, by sweeping too broadly and infringing upon fundamental rights." *Catalano,* 104 So. 3d at 1077 (citation omitted). "In the context of the First Amendment, the overbreadth doctrine prohibits the Government from banning unprotected speech if a substantial amount of protected speech is prohibited or chilled in the process." *Id.* (citations, quotation marks, and brackets omitted). As the Third District further has explained:

> The doctrine of overbreadth permits an individual whose own speech or conduct may be prohibited to challenge an enactment facially because it also threatens others not before the court – those who desire to engage in legally protected

4

expression but who may refrain from doing so rather than risk prosecution or undertake to have the law declared partially invalid. In other words, the issue of overbreadth is one of the few exceptions to the traditional rules that courts will not consider factual questions beyond the scope of the case at hand. Hypothetical consequences are considered in the case of allegedly overbroad statutes precisely because this is the only way to give effect to the constitutional right of free speech.

. . . .

It is said, however, that in the arena of free speech and expression, the overbreadth doctrine is an unusual remedy which is to be used sparingly, particularly where the challenged statute is primarily meant to regulate conduct and not merely pure speech.

*J.L.S. v. State*, 947 So. 2d 641, 644-45 (Fla. 3d DCA 2007) (internal quotation marks and citations omitted).

The defendant, as the party challenging the statutes at issue, "bears the burden of demonstrating from both the text of the statute and from actual facts that substantial overbreadth exists." *Id.* at 645. Therefore, in our analysis of each statute, "we first look at the language of the statute itself." *Catalano*, 104 So. 3d at 1075 (citations omitted).

*Overbreadth Challenge to the Video Voyeurism Statute*

The video voyeurism statute, section 810.145, Florida Statutes (2010), provides, in pertinent part:

(2) A person commits the offense of video voyeurism if that person:

(a) For his or her own amusement, entertainment, sexual arousal, gratification, or profit, or for the purpose of degrading or abusing another person, intentionally uses or installs an imaging device to secretly view, broadcast, or record a person, without that person's knowledge and consent, who is dressing, undressing, or privately exposing the body, at a place and time when that person has a reasonable expectation of privacy[.]

§ 810.145(2)(a), Fla. Stat. (2010). Section 810.145(5), Florida Statutes (2010), provides the following exemptions from the video voyeurism prohibition:

> (a) Law enforcement agency conducting surveillance for a law enforcement purpose;
>
> (b) Security system when a written notice is conspicuously posted on the premises stating that a video surveillance system has been installed for the purpose of security for the premises;
>
> (c) Video surveillance device that is installed in such a manner that the presence of the device is clearly and immediately obvious; or
>
> (d) Dissemination, distribution, or transfer of images subject to this section by a provider of an electronic communication service as defined in 18 U.S.C. s. 2510(15), or a provider of a remote computing service as defined in 18 U.S.C. s. 2711(2)
> . . . .

§ 810.145(5)(a)-(d), Fla. Stat. (2010).

The defendant argues that section 810.145(2)(a) is overbroad by infringing upon First Amendment protected conduct in two respects: (1) the statute severely restricts the freedom of the press because investigative journalists often use imaging devices to record individuals who may be involved in amoral or illegal activities to expose those activities to the public, and such investigative work runs afoul of the statute if the imaging device incidentally films a person in a state of undress; and (2) the prohibition on the use of imaging devices for "profit" is problematic for those such as private investigators who record as part of their legitimate business, because if such investigations happen to record someone dressing, undressing, or in an exposed state, the investigator has violated the statute as written.

The defendant's arguments lack merit. Section 810.145(2)(a)'s plain language does not restrict the press from using or installing imaging devices if that activity is not for the reporter's "own amusement, entertainment, sexual arousal, gratification, or profit, or for the purpose of degrading or abusing another person." § 810.145(2)(a), Fla. Stat. (2010). Rather, such activity presumably would be for the press's purposes of

news gathering and news dissemination, and thus not a per se violation of section 810.145(2)(a).[1]

Additionally, for two reasons, the defendant lacks standing to argue that the statute improperly prohibits private investigators from using imaging devices to record a person for "profit."

First, such investigation activities do not implicate First Amendment protected activities and "[t]he overbreadth doctrine applies only if the legislation is susceptible of application to conduct protected by the First Amendment." *Se. Fisheries Ass'n v. Dep't of Natural Res.*, 453 So. 2d 1351, 1353 (Fla. 1984) (citations and internal quotation marks omitted). *See also Wells v. State*, 402 So. 2d 402, 405 (Fla. 1981) ("[The defendant] has no standing to challenge [the statute] as overbroad. . . . [S]*he has made no assertion that the statute inhibits activities protected by the first amendment.*") (emphasis added; internal citation omitted).

Second, the state plainly prosecuted the defendant for using his camera "[f]or his . . . own amusement, sexual arousal, [or] gratification," and not for "profit." As such, the defendant lacks standing to challenge the statutory term "profit." *Cf. Pallas v. State*, 636 So. 2d 1358, 1363-64 (Fla. 3d DCA 1994) ("Defendant was not prosecuted for following the victim.

---

[1] We do not intend the foregoing paragraph to be construed as providing the press with carte blanche to use or install an imaging device "to secretly view, broadcast, or record a person, without that person's knowledge and consent, who is dressing, undressing, or privately exposing the body, at a place and time when that person has a reasonable expectation of privacy." § 810.145(2)(a), Fla. Stat. (2010). That issue is not before us, and our supreme court already has commented on a similar issue in *Shevin v. Sunbeam Television Corp.*, 351 So. 2d 723 (Fla. 1977), which upheld section 934.03(2)(d), Florida Statutes (1969), prohibiting the interception of certain wire or oral communications unless all parties thereto give prior consent. Analyzing that statute, the court commented:

> News gathering is an integral part of news dissemination, but hidden mechanical contrivances are not indispensable tools of news gathering. The ancient art of investigative reporting was successfully practiced long before the invention of electronic devices, so they cannot be said to be "indispensable tools of investigative reporting." The First Amendment is not a license to trespass or to intrude by electronic means into the sanctity of another's home or office. It does not become such a license simply because the person subjected to the intrusion is reasonably suspected of committing a crime.

*Id.* at 727.

Instead he was prosecuted under the 'harassment plus threat' portion of the statute. In our view[,] defendant is without standing to challenge the statutory term 'follows' on grounds of vagueness.") (citations omitted).

Even if the defendant had standing to challenge profit-related activities such as private investigations, we conclude that a plain distinction exists between "profit" as an incidental effect of an investigation-related business and "profit" as a pure commercial purpose. *Cf. Gawker Media, LLC v. Bollea*, 129 So. 3d 1196, 1202 n.6 (Fla. 2d DCA 2014) ("We are aware that [the defendant] is likely to profit indirectly from publishing the report with video excerpts to the extent that it increases traffic to [its] website. However, this is distinguishable from selling the [recording] purely for commercial purposes.").

*Overbreadth Challenge to the Voyeurism Statute*

The voyeurism statute, section 810.14, Florida Statutes (2011), provides, in pertinent part:

> (1) A person commits the offense of voyeurism when he or she, with lewd, lascivious, or indecent intent, secretly observes another person when the other person is located in a dwelling, structure, or conveyance and such location provides a reasonable expectation of privacy.

§ 810.14(1), Fla. Stat. (2011).[2]

---

[2] In 2014, the Legislature amended section 810.14 as follows, in pertinent part:

> (1) A person commits the offense of voyeurism when he or she, with lewd, lascivious, or indecent intent:
>
> (a) Secretly observes another person when the other person is located in a dwelling, structure, or conveyance and such location provides a reasonable expectation of privacy.
>
> (b) Secretly observes another person's intimate areas in which the person has a reasonable expectation of privacy, when the other person is located in a public or private dwelling, structure, or conveyance. As used in this paragraph, the term "intimate area" means any portion of a person's body or undergarments that is covered by clothing and intended to be protected from public view.

§ 810.14(1), Fla. Stat. (2014).

8

The defendant argues that section 810.14(1) is overbroad because, unlike section 810.145(2)(a), section 810.14(1) does not require that the defendant's observation of the other person be conducted "without that person's knowledge and consent." § 810.145(2)(a), Fla. Stat. (2010). In support of this argument, the defendant provides examples of non-criminal behavior which he contends section 810.14(1) transforms into criminal behavior: reality television show contestants living in a home continually observed by cameras; and exhibitionists agreeing to a voyeur observing them in their home.

We conclude the defendant lacks standing to raise this argument and, in any event, his argument and examples fail on their merits.

The defendant lacks standing to raise this argument for two reasons. First, an argument centered upon whether a defendant observes another person "without that person's knowledge or consent" does not implicate First Amendment protected activities, and "[t]he overbreadth doctrine applies only if the legislation is susceptible of application to conduct protected by the First Amendment." *Se. Fisheries Ass'n*, 453 So. 2d at 1353 (citation and internal quotation marks omitted); *see also Wells*, 402 So. 2d at 405.

Second, the record plainly indicates that the defendant's observation of the victims in these two cases was conducted "without [their] knowledge and consent." As such, the defendant lacks standing to challenge the hypothetical situation where a defendant is charged with voyeurism for observing another person *with* their knowledge and consent. *Cf. Pallas*, 636 So. 2d at 1363-64.

The defendant's argument also fails on the merits. Section 810.14(1) requires that the voyeur "secretly" observe another person and that the person being observed is located where there is a "reasonable expectation of privacy." § 810.14(1), Fla. Stat. (2011). These qualifying words exclude the defendant's hypothetical situation where a defendant is charged with voyeurism for observing another person *with* their knowledge and consent. If a person knows and consents to being observed in a location, such observation is not being done "secretly" and the person being observed has no "reasonable expectation of privacy" in that location.

The defendant's examples similarly do not hold water. Reality television show contestants living in a home continually observed by cameras, and exhibitionists agreeing to a voyeur observing them in their home, are not being observed "secretly," and have no "reasonable expectation of privacy"

in the location in which they are being observed, because they know of and have consented to such observations.

*Sentencing Error*

The defendant also argues that the circuit court erred in denying his motion to correct sentencing error where the orders of community control and probation contained the handwritten notation "sex offender conditions apply" which the court did not orally pronounce at sentencing. Our review of this argument is de novo. *See Smith v. State*, 143 So. 3d 1023, 1024 (Fla. 4th DCA 2014) ("Because a motion to correct a sentencing error involves a pure issue of law, our standard of review is de novo.") (citation and quotation marks omitted).

We agree with this argument. The defendant was not convicted of any of the sex offenses specified in section 948.30, Florida Statutes (2013), which imposes standard general conditions of probation or community control for those specified sex offenses.[3] Therefore, any conditions which the court imposed on the defendant's community control and probation terms became "special conditions" which had to be orally pronounced before they could be placed in the orders of community control and probation. Our supreme court explained this requirement in *Lawson v. State*, 969 So. 2d 222 (Fla. 2007):

> This Court has distinguished between special conditions and general conditions on the issue of how much due process is owed to a probationer. General conditions, which are contained within the Florida Statutes, must be included within the order but need not be orally pronounced at the sentencing hearing. Special conditions, which are those not specifically authorized by statute, must be orally pronounced at sentencing before they can be placed in the probation order. The reason for the distinction relates to due process, such that a probationer is imputed with notice as to those conditions that are based upon statute but not as to those conditions that were uniquely drafted for purposes of his or her probation. Thus, in order to satisfy due process and provide a probationer with adequate notice, the trial court must orally pronounce any special condition at sentencing.

*Id.* at 227 n.3 (internal citations omitted).

---

[3] We leave it to the Legislature to determine if it should add voyeurism and video voyeurism to the sex offenses specified in section 948.30.

Here, at sentencing, the court did not orally pronounce that "sex offender conditions apply" to the defendant's community control and probation terms. Instead, the court orally pronounced which special conditions it was imposing upon those terms, and only those orally pronounced special conditions could have been placed in the orders of community control and probation. Thus, the court erred in denying the defendant's motion to correct sentencing error, which sought to strike from the orders of community control and probation the handwritten notation "sex offender conditions apply" which the court did not orally pronounce at sentencing. *See Justice v. State*, 674 So. 2d 123, 126 (Fla. 1996) ("[W]here a sentence is reversed because the trial court failed to orally pronounce certain special conditions of probation which later appeared in the written sentence, the court must strike the unannounced conditions and cannot reimpose them upon resentencing.").

The state argues that the handwritten notation "sex offender conditions apply" simply meant the special conditions which the judge orally pronounced at sentencing, and did not mean other conditions which the court did not orally pronounce. The state also argues that, if any ambiguity exists between the sentencing orders and the pronouncement in open court, then we should remand the case for "clarification of the ambiguity between the sentencing order and the pronouncement in open court." *Russ v. State*, 519 So. 2d 715, 716 (Fla. 1st DCA 1988) (citation omitted).

We disagree with the state's interpretation of the handwritten notation "sex offender conditions apply" and see no ambiguity between the sentencing orders and the pronouncement in open court. The court was unambiguous in its oral pronouncement as to the special conditions which it imposed at sentencing, and did not mention any of the other possible conditions identified in section 948.30, such as a prohibition on viewing, accessing, owning, or possessing any obscene, pornographic, or sexually stimulating visual or auditory material. *See generally* § 948.30, Fla. Stat. (2013). Thus, only those special conditions which the court orally pronounced could have been placed in the orders of community control and probation, and those orders must be corrected to reflect the oral pronouncement. *See Moreland v. State*, 853 So. 2d 574, 575 (Fla. 4th DCA 2003 ("Where there is no ambiguity in the trial court's oral pronouncement, the sentencing order must be corrected to reflect the oral pronouncement.").

*Conclusion*

The voyeurism and video voyeurism statutes plainly are "primarily meant to regulate conduct and not merely pure speech." *J.L.S.*, 947 So. 2d at 644-45 (citation omitted). To paraphrase our sister court when analyzing a different statute, there has been no demonstration in this record that sections 810.145 or 810.14 would prohibit a substantial amount of protected speech in relation to their otherwise legitimate applications. *Id.* at 645-46 (citations omitted). Thus, because any applications of sections 810.145 and 810.14 which violate the First Amendment can be remedied through as-applied litigation, we decline to use the "strong medicine" of overbreadth to invalidate these statutes. *Id.* at 646.

Based on the foregoing, we affirm the defendant's convictions. We also conclude without further discussion that the defendant's other arguments for reversal of his convictions and sentences lack merit. We reverse only the denial of the defendant's motion to correct sentencing error for the reasons stated above, and remand with directions to the court to strike from the orders of community control and probation the handwritten notation "sex offender conditions apply" which the court did not orally pronounce at sentencing.

*Affirmed in part, reversed in part, and remanded only for correction of sentences.*

WARNER and MAY, JJ., concur.

\* \* \*

**Not final until disposition of timely filed motion for rehearing.**

12