408 So.2d 211 (1981)
WINN-DIXIE STORES, INC., Appellant,
v.
STATE of Florida, Appellee.
No. 54358.
Supreme Court of Florida.
November 12, 1981.
Rehearing Denied February 8, 1982.
Eugene P. Spellman of the Law Offices of Eugene P. Spellman, Miami, for appellant.
Jim Smith, Atty. Gen., and Anthony C. Musto, Asst. Atty. Gen., Miami, for appellee.
BOYD, Justice.
This cause is before the Court on appeal of a judgment of the Dade County Court that passed on the constitutionality of a state law. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. (1972).
The appellant corporation was charged by information with violating section 106.08(1)(e), Florida Statutes (Supp. 1974). The statute provides in pertinent part as follows:
(1) No person or political committee shall make contributions to any candidate or political committee in this state, in moneys, material, or supplies or by way of loan, in excess of the following amounts:
... .
(e) To any political committee in support of, or in opposition to, an issue to be voted on in a countywide, districtwide, or less than countywide election, $1,000.
Winn-Dixie Stores filed a motion to dismiss pursuant to Florida Rule of Criminal Procedure 3.190. The motion asserted that chapter 106 was unconstitutional. The motion also alleged that the material facts of the case were undisputed. Those facts, as alleged in the motion, were as follows.
At the general election of 1974, there was to be placed on the ballot a referendum, by which the voters of Dade County would adopt or reject a county ordinance prohibiting the sale of beverages in non-returnable containers. Because the adoption of such an ordinance would adversely affect its retail grocery business, Winn-Dixie wished to exercise its right to freedom of expression by campaigning against the ordinance. The corporation transferred $30,000 from its general fund to an account in the name of Campaign Fund of Winn-Dixie Stores, Inc. *212 Approximately $24,000 was spent for advertising in the campaign against the container ordinance. After the campaign, the remainder of the money was returned to Winn-Dixie's general fund.
Appellant contended in its motion that under these undisputed facts, section 106.08(1)(e) could not constitutionally be applied to it because what it did was to make independent expenditures and not contributions to a candidate. The essence of the defendant's argument was that under the decision of the United States Supreme Court in Buckley v. Valeo, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976), limitations on contributions to candidates, because they serve the compelling interest of preventing corruption, are permissible while limitations on independent expenditures in a political campaign serve no compelling interest and are therefore an impermissible infringement on freedom of expression.
Following the denial of its motion to dismiss, appellant entered a plea of nolo contendere, reserving the right to appeal the court's ruling on the constitutionality of the statute.
Appellant contends that section 106.08(1)(e), Florida Statutes (1974), violates its right to freedom of speech under the First Amendment to the United States Constitution, and that the judgment of conviction thereunder cannot stand. We agree that as applied to the facts of this case, the limitation on expenditures in issue-referendum campaigns is unconstitutional.
Limitations on the amounts that persons may contribute or spend in campaigns to influence the results of political elections affect activities that are at the core of the First Amendment's protection of freedom of expression and association. When such limitations have a substantial impact on such activities, they impinge upon First Amendment rights. Laws which have such impact are subject to exacting scrutiny: they must be supported by a compelling governmental interest and must be narrowly drawn so as to involve no more infringement than is necessary. First National Bank of Boston v. Bellotti, 435 U.S. 765, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978); Buckley v. Valeo, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976).
Section 106.08(1)(e) imposes such limitations and has substantial impact on protected freedoms. The state contends that the statute serves two compelling state interests: the prevention of corruption in political campaigns and the promotion of disclosure which enables the public to know who is financing a campaign.
The constitutionality of the statute under consideration here, along with that of one of its companion provisions, was at issue in Let's Help Florida v. McCrary, 621 F.2d 195 (5th Cir.1980). The court there looked at the principles enunciated in the Bellotti and Buckley cases and reasoned that one of the asserted state interests underlying section 106.08(1)(d) and (e), the prevention of corruption and the appearance thereof, was simply not compelling in the context of an issue referendum.
The state's interest in preventing the actual or apparent corruption of candidates, which the Supreme Court found so compelling in Buckley, does not justify restrictions upon political contributions in referendum elections. When people elect a candidate, they choose someone to whom they can delegate their political decision-making. The people's need to prevent large contributors from improperly influencing this representative decisionmaker is critical. In contrast, when people vote on a referendum proposal, they directly decide the pertinent political issue for themselves. Large contributions for publicity by one group or another do not influence the political decisionmakers  in this case, the voters themselves  except in a manner protected by the first amendment.
Let's Help Florida v. McCrary, 621 F.2d at 199-200.
The second asserted state interest  promotion of disclosure  was also considered in McCrary.
Appellants also contend that the restrictions upon the size of contributions to a single committee are necessary to promote *213 adequate disclosure about who is financing a campaign. In the absence of these restrictions, appellants contend that corporations and wealthy individuals would mask their participation in a referendum campaign by funneling large sums of money into a committee which the public would see only under an innocuous title such as "Let's Help Florida" or "Dade Voters for a Free Choice." Although promoting disclosure of campaign contributors is an important state interest, the restrictions upon political contributions in sections 106.08(1)(d), (e) cannot be justified as disclosure measures because the statutes are not closely drawn to avoid unnecessary abridgment of associational freedoms. These statutes that restrict the amount a person may contribute to a single committee do little to promote disclosure. The primary effect of the statutes is to compel large contributors who support or oppose a referendum issue to form multiple partisan committees, each of which can receive the maximum amount from a single contributor under the statute. These multiple committees provide no additional disclosure; the public still sees only the innocuous names of the different committees, and not the identities of the underlying contributors.
Florida can and does effectively promote the disclosure of large contributors through measures that are less harmful to first amendment rights. For example, sections 106.03 and 106.07 of the Florida Election Code require political committees to register with the state and to file information about each contribution and contributor throughout the campaign. This information is available to the public and may be published through newspapers and other media. Section 106.143 requires disclosure of the source of payment for all political advertisements and campaign literature. Measures such as these provide adequate disclosure without directly restricting contributions or other important first amendment rights.
Id. at 200-01.
We find the reasoning and the holding of McCrary to be directly applicable to the instant case. Section 106.08(1)(e), Florida Statutes (1974), impinges upon First Amendment rights. Neither of the governmental interests asserted by the state as compelling is sufficient to justify the statute's impact upon freedom of expression. Therefore, the statute is unconstitutional insofar as it is sought to be applied to expenditures in issue-referendum campaigns.
We reverse the judgment and remand with directions that the information be dismissed.
It is so so ordered.
SUNDBERG, C.J., and ADKINS, OVERTON and McDONALD, JJ., concur.
ALDERMAN, J., concurs in result only.