LABARGA, J.
This case is before the Court on appeal from a decision of the Second District Court of Appeal, State v. Catalano, 60 So.3d 1139 (Fla. 2d DCA 2011), which declared section 316.3045, Florida Statutes (2007), to be invalid. We have jurisdiction.[1] For the reasons set forth below, we affirm the Second District’s declaration that the statute is invalid because it is an unreasonable restriction on the freedom of expression. We also find that the statute is unconstitutionally overbroad, but not unconstitutionally vague. Finally, we find that section 316.3045(3) is not severable from the remainder of the statute.
FACTS AND PROCEDURAL HISTORY
Richard Catalano (Catalano) and Alexander Schermerhorn (Schermerhorn) were cited by law enforcement officers in separate incidents in Pinellas County, Florida, for violating the sound standards of section 316.3045(l)(a), Florida Statutes (2007). Catalano, 60 So.3d at 1141.[2] Specifically, section 316.3045 provides as follows:
Operation of radios or other mechanical soundmaking devices or instruments in vehicles; exemptions.—
(1) It is unlawful for any person operating or occupying a motor vehicle on a street or highway to operate or amplify the sound produced by a radio, tape player, or other mechanical soundmak-ing device or instrument from within the motor vehicle so that the sound is:
(a) Plainly audible at a distance of 25 feet or more from the motor vehicle; or
(b) Louder than necessary for the convenient hearing by persons inside the vehicle in areas adjoining churches, schools, or hospitals.
*1073 (2) The provisions of this section shall not apply to any law enforcement motor vehicle equipped with any communication device necessary in the performance of law enforcement duties or to any emergency vehicle equipped with any communication device necessary in the performance of any emergency procedures.
(3) The provisions of this section do not apply to motor vehicles used for business or political purposes, which in the normal course of conducting such business use soundmaking devices. The provisions of this subsection shall not be deemed to prevent local authorities, with respect to streets and highways under their jurisdiction and within the reasonable exercise of the police power, from regulating the time and manner in which such business may be operated.
(4) The provisions of this section do not apply to the noise made by a horn or other warning device required or permitted by s. 316.271. The Department of Highway Safety and Motor Vehicles shall promulgate rules defining “plainly audible” and establish standards regarding how sound should be measured by law enforcement personnel who enforce the provisions of this section.
(5) A violation of this section is a noncriminal traffic infraction, punishable as a nonmoving violation as provided in chapter 318.
§ 316.3045, Fla. Stat. (2007).
As required by subsection (4), the Department of Highway Safety and Motor Vehicles (DMV) promulgated the following rule:
15B-13.001 Operation of Soundmaking Devices in Motor Vehicles.
(1)The purpose of this rule is to set forth the definition of the term “plainly audible” and establish standards regarding how sound should be measured by law enforcement personnel who enforce section 316.3045, F.S.
(2) “Plainly Audible” shall mean any sound produced by a radio, tape player, or other mechanical or electronic sound-making device, or instrument, from within the interior or exterior of a motor vehicle, including sound produced by a portable soundmaking device, that can be clearly heard outside the vehicle by a person using his normal hearing faculties, at a distance of twenty-five feet (25’ ) or more from the motor vehicle.
(3) Any law enforcement personnel who hears a sound that is plainly audible, as defined herein, shall be entitled to measure the sound according to the following standards:
(a) The primary means of detection shall be by means of the officer’s ordinary auditory senses, so long as the officer’s hearing is not enhanced by any mechanical device, such as a microphone or hearing aid.
(b) The officer must have a direct line of sight and hearing, to the motor vehicle producing the sound so that he can readily identify the offending motor vehicle and the distance involved.
(c) The officer need not determine the particular words or phrases being produced or the name of any song or artist producing the sound. The detection of a rhythmic bass reverberating type sound is sufficient to constitute a plainly audible sound.
(d) The motor vehicle from which the sound is produced must be located upon (stopped, standing or moving) any street or highway as defined by Section 316.002(53), F.S. Parking lots and driveways are included when any part thereof is open to the public for purposes of vehicular traffic.
*1074 (4) The standards set forth in subsection (3) above shall also apply to the detection of sound that is louder than necessary for the convenient hearing of persons inside the motor vehicle in areas adjoining churches, schools, or hospitals.
Fla. Admin. Code R. 15B-13.001 (2011). Both Catalano and Schermerhorn entered not guilty pleas and moved to dismiss their citations in county court, arguing that section 316.3045 is facially unconstitutional. The county court denied their respective motions based on the Fifth District’s decision in Davis v. State, 710 So.2d 635 (Fla. 5th DCA 1998), which found section 316.3045, as originally written prior to the 2005 amendment, constitutional. Catala-no, 60 So.3d at 1142.
Thereafter, Catalano and Schermerhorn changed their pleas to nolo contendere, reserving the right to appeal the constitutionality of section 316.3045. The county court accepted their pleas and withheld adjudication. Each then appealed to the circuit court of Pinellas County, arguing that section 316.3045 is facially unconstitutional because the “plainly audible” standard is vague, overbroad, invites arbitrary enforcement, and impinges on their free speech rights. The circuit court issued virtually identical opinions holding that the decision in Davis conflicts with the Second District’s decision in Easy Way of Lee County, Inc. v. Lee County, 674 So.2d 863, 867 (Fla. 2d DCA 1996), which held that a county’s general sound ordinance’s “plainly audible” standard was unconstitutionally vague and overbroad. Catalano, 60 So.3d at 1143-44. Accordingly, bound by the decision in Easy Way, the circuit court reversed the trial court’s orders denying the motions to dismiss the citations.
Subsequently, the State filed a petition for writ of certiorari in the Second District Court of Appeal, arguing that the circuit court departed from the essential requirements of law because section 316.3045 comports with free speech rights, does not invite arbitrary enforcement, is not vague, overbroad, or content based, and the circuit court failed to follow Davis, which upheld the constitutionality of section 316.3045. The Second District denied the State’s petition for certiorari relief, holding that the circuit court did not depart from the essential requirements of the law in applying the binding Second District precedent of Easy Way, which held that the “plainly audible” standard of a noise ordinance was unconstitutional.[3] See Catalano, 60 So.3d at 1144-46. In addition, the majority in Catalano held that section 316.3045(3) is an unconstitutional content-based restriction because it contains an exemption for vehicles used for business and political purposes that use sound-making devices in the normal course of operations. Id. at 1146.
ANALYSIS
[I] The State appealed the declaration of invalidity of section 316.3045 and asks this Court to determine whether: (a) the statutory “plainly audible” standard in sec *1075 tion 316.3045(l)(a) is unconstitutionally vague and overbroad; and (b) whether the “business/political” exception in section 316.3045(3) is permissible, but even if not, whether the exception should be severed. For the reasons that follow, we find that the statute is not unconstitutionally vague, but is unconstitutionally overbroad and an impermissible content-based restriction. Additionally, we find that severance of section 316.3045(3) is not an appropriate remedy to preserve the constitutionality of this statute. We first examine whether section 316.3045(l)(a) is unconstitutionally vague.[4]
Vagueness
A court’s decision regarding the constitutionality of a statute is reviewed de novo as it presents a pure question of law. See Caribbean Conservation Corp. v. Fla. Fish & Wildlife Conservation Comm’n, 838 So.2d 492, 500 (Fla.2003). There is a strong presumption that a statute is constitutionally valid, and all reasonable doubts about the statute’s validity must be resolved in favor of constitutionality. See DuFresne v. State, 826 So.2d 272, 274 (Fla.2002). “This Court has noted, however, that in a vagueness challenge, any doubt as to a statute’s validity should be resolved in favor of the citizen and against the State.” Id. (citing State v. Brake, 796 So.2d 522, 527 (Fla.2001)). Accordingly, in order to withstand such a challenge, a statute must provide persons of common intelligence and understanding adequate notice of the proscribed conduct. Id. at 527. As we explain below, we find that section 316.3045(l)(a), which prohibits the amplification of sound from within a vehicle so that it is “plainly audible” beyond twenty-five feet, is not unconstitutionally vague.
When considering the constitutionality of a statute, we first look at the language of the statute itself. See State v. Dugan, 685 So.2d 1210, 1212 (Fla.1996); Miele v. Prudential-Bache Sec., Inc., 656 So.2d 470, 472 (Fla.1995). Specifically, section 316.3045(l)(a) states as follows:
Operation of radios or other mechanical soundmaking devices or instruments in vehicles; exemptions. — :
(1) It is unlawful for any person operating or occupying a motor vehicle on a street or highway to operate or amplify the sound produced by a radio, tape player, or other mechanical soundmak-ing device or instrument from within the motor vehicle so that the sound is:
(a) Plainly audible at a distance of 25 feet or more from the motor vehicle.
§ 316.3045, Fla. Stat. (2007). Catalano and Schermerhorn argue that the “plainly audible” language is unconstitutionally vague on its face because whether a police officer can hear amplified sound beyond twenty-five feet is necessarily subject to each particular police officer’s auditory faculties, leading to arbitrary enforcement based on whether a police officer personal *1076 ly finds the amplified sound disturbing. In short, Catalano and Schermerhorn argue that citizens cannot conform their behavior to the law because of uncertainty over whether the music in their vehicles would be plainly audible beyond twenty-five feet to a particular police officer.
To withstand constitutional scrutiny, however, statutes do not have to set determinate standards or provide mathematical certainty. See Grayned v. City of Rockford, 408 U.S. 104, 110, 92 S.Ct. 2294, 38 L.Ed.2d 222 (1972) (observing that we cannot expect mathematical certainty from the use of words); Broadrick v. Oklahoma, 413 U.S. 601, 608, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973) (explaining that the English language has limitations with respect to being both specific and brief, but noting that statutes must set out standards in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with, without sacrifice to the public interest). Applying the rationale from Grayned and Broadrick, the “plainly audible” standard provides persons of common intelligence and understanding adequate notice of the proscribed conduct: individuals operating or occupying a motor vehicle on a street or highway in Florida cannot amplify sound so that it is heard beyond twenty-five feet from the vehicle. Although it is true that each police officer may have different auditory sensitivities, the “plainly audible” beyond twenty-five feet standard provides fair warning of the prohibited conduct and provides an objective guideline — distance—to prevent arbitrary and discriminatory enforcement so that basic policy matters are not delegated to policemen, judges, and juries for resolution on an ad hoc and subjective basis. See Grayned, 408 U.S. at 108-09, 92 S.Ct. 2294. This is not a standard that calls for police officers to judge whether sound is excessive, raucous, disturbing, or offensive; if the officer can hear the amplified sound more than twenty-five feet from its source, the individual has violated the statute.
Indeed, several jurisdictions both in Florida and around the country have upheld similar statutes in the face of vagueness challenges. See, e.g., Montgomery v. State, 69 So.3d 1023, 1032 (Fla. 5th DCA 2011) (holding section 316.3045(l)(a) is not unconstitutionally vague, but finding the statute unconstitutionally overbroad as an impermissible content-based restriction); Davis v. State, 710 So.2d 635, 636 (Fla. 5th DCA 1998) (upholding pre-2005 amendment version of section 316.3045(l)(a), which required that amplified sound be plainly audible more than one-hundred feet from the vehicle, as not unconstitutionally vague); State v. Medel, 139 Idaho 498, 80 P.3d 1099, 1103 (Ct.App.2003) (upholding ordinance as not unconstitutionally vague where it prohibited operating a vehicle’s sound system so that it is audible at a distance of fifty feet); Davis v. State, 272 Ga. 818, 537 S.E.2d 327, 328-29 (2000) (finding that a statute which prohibits amplified sound from a vehicle which is “plainly audible” at 100 feet is not vague and stating that it would belie credibility to find that persons of ordinary intelligence do not know what it means for amplified sound to be “plainly audible” at a distance greater than one-hundred feet); People v. Hodges, 70 Cal.App.4th 1348, 83 Cal.Rptr.2d 619, 622 (1999) (ordinance prohibiting a vehicle’s sound system from operating where it could be heard twenty-five feet away not unconstitutionally vague); Moore v. City of Montgomery, 720 So.2d 1030, 1032 (Ala.Crim.App.1998) (holding ordinance that prohibited sound audible five feet from vehicle not unconstitutionally vague and stating that finding otherwise belies credibility); Holland v. City of Tacoma, 90 Wash.App. 533, 954 P.2d 290, 295 (1998), review denied, 136 *1077 Wash.2d 1015, 966 P.2d 1278 (1998) (finding ordinance not unconstitutionally vague as the court noted that a person of ordinary intelligence knows what is meant by prohibition of sound that is audible more than fifty feet away); Com. v. Scott, 878 A.2d 874, 878-79 (Pa.Super.Ct.2005). Additionally, the United States Supreme Court has rejected vagueness challenges to arguably more subjective terms. See Kovacs v. Cooper, 836 U.S. 77, 78, 69 S.Ct. 448, 98 L.Ed. 513 (1949) (upholding constitutionality of a sound ordinance that prohibited the use of a sound-generating instrument that produces loud and raucous sound on vehicles); Grayned, 408 U.S. at 107-08, 92 S.Ct. 2294 (upholding constitutionality of a sound ordinance that prohibited sound that disturbed or tended to disturb the peace). Thus, we find that the “plainly audible” standard is not unconstitutionally vague.[5] We now discuss whether the statute is unconstitutionally over-broad or an unreasonable restriction on the freedom of expression.[6]
Overbreadth and the First Amendment
The overbreadth doctrine applies when legislation criminalizes constitution-ally protected activities along with unprotected activities, by sweeping too broadly and infringing upon fundamental rights. See Firestone v. News-Press Publ’g Co., 538 So.2d 457, 459 (Fla.1989) (citing State v. Gray, 435 So.2d 816, 819 (Fla.1983)). In the context of the First Amendment, “[t]he overbreadth doctrine prohibits the Government from banning unprotected speech if a substantial amount of protected speech is prohibited or chilled in the process.” Ashcroft v. Free Speech Coalition, 535 U.S. 234, 255, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002); see City of Daytona Beach v. Del Percio, 476 So.2d 197, 202 (Fla.1985). The government may regulate expression only with narrow specificity. NAACP v. Button, 371 U.S. 415, 433, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963); see also Firestone, 538 So.2d at 459 (“Restrictions on first amendment rights must *1078 be supported by a compelling governmental interest and must be narrowly drawn to insure that there is no more infringement than is necessary.”) (citing Winn-Dixie Stores, Inc. v. State, 408 So.2d 211 (Fla.1981)). The overbreadth doctrine, applied facially, however, is “strong medicine” that must be used sparingly. Del Percio, 476 So.2d at 202 (citing Broadrick, 413 U.S. at 613, 615, 93 S.Ct. 2908). Accordingly, the first step in an overbreadth analysis is determining whether the statute restricts First Amendment rights, and whether the restrictions are substantial. Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 494, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982).
Here, the State argues that Catalano and Schermerhorn do not have a constitutionally recognized right to play loud music, thus the statute is not subject to an overbreadth analysis. However, the right to play music, including amplified music, in public fora is protected under the First Amendment. See Ward v. Rock Against Racism, 491 U.S. 781, 788-90, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989) (noting that regulation of amplified music in public park was protected by the First Amendment); Saia v. New York, 334 U.S. 558, 562, 68 S.Ct. 1148, 92 L.Ed. 1574 (1948) (“The police need not be given the power to deny a man the use of his radio in order to protect a neighbor against sleepless nights.”). This right, nevertheless, is subject to reasonable limitations on the time, place, and manner of the protected speech. Limitations are reasonable if they are “justified without reference to the content of the regulated speech, ... narrowly tailored to serve a significant governmental interest, and ... leave open ample alternative channels for communication of the information.” Ward, 491 U.S. at 791, 109 S.Ct. 2746. If the time, place, and manner of the limitations are content based, a strict standard of scrutiny is applied. See, e.g., Simmons v. State, 944 So.2d 317, 323 (Fla.2006).
“The principal inquiry in determining content neutrality, in speech cases generally and in time, place, or manner cases in particular, is whether the government has adopted a regulation of speech because of disagreement with the message it conveys.” Ward, 491 U.S. at 791, 109 S.Ct. 2746. If the government’s purpose has no relation to the content of the speech, the statute will be deemed neutral even if the restriction affects some speakers or messages and not others. See id. Initially, it would appear that section 316.3045(l)(a) does not regulate expression based on the content of the message as it bans all amplified sound coming from within the interior of a motor vehicle that is “plainly audible” beyond twenty-five feet from the source. In short, the statute proscribes excessive sound emanating from vehicles on public thoroughfares. Subsection (3), however, excepts “motor vehicles used for business or political purposes, which in the normal course of conducting such business use [sound-making] devices” from this broad proscription.
The State argues that this exception is based on the type of vehicle, and not the content of the message, because these vehicles do not present the same safety and noise pollution concerns as other vehicles. Thus, according to the State, the justification for the differential treatment, and the statute as a whole, is content neutral. The regulation, however, treats commercial and political speech more favorably than noncommercial speech. Additionally, the statute does not have to intentionally suppress certain ideas to be constitutionally suspect as a content-based restriction. See City of Cincinnati v. Discovery Network, Inc., 507 U.S. 410, 429, 113 S.Ct. 1505, 123 L.Ed.2d 99 (1993) *1079 (citing Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd., 502 U.S. 105, 117, 112 S.Ct. 501, 116 L.Ed.2d 476 (1991)). Regardless of the intent of the Legislature, section 316.3045 is a sweeping ban on amplified sound that can be heard beyond twenty-five feet of a motor vehicle, unless that sound comes from a business or political vehicle, which presumably uses sound-making devices for the purpose of expressing commercial and political viewpoints. For instance, business and political vehicles may amplify commercial or political speech at any volume, whereas an individual traversing the highways for pleasure would be issued a citation for listening to any type of sound, whether it is religious advocacy or music, too loudly. Thus, this statute is content based because it does not apply equally to music, political speech, and advertising. See Discovery Network, 507 U.S. at 428-29, 113 S.Ct. 1505 (stating that a sound ordinance is permissible if it applies equally to music, political speech, and advertising). Accordingly, this statute is subject to the strict scrutiny analysis to determine whether it is a reasonable restriction or unconstitutionally overbroad.
The State argues that this statute serves the State’s interest in traffic safety and protecting the public from excessively loud noise on public streets. Protecting the public from excessively loud noise is a compelling state interest. See Grayned, 408 U.S. at 116, 92 S.Ct. 2294 (“If overamplified loudspeakers assault the citizenry, government may turn them down.”) (citing Kovacs, 336 U.S. at 80, 69 S.Ct. 448, and Saia, 334 U.S. at 562, 68 S.Ct. 1148). Traffic safety, however, which the State argues is the overarching purpose of the statute, is generally not considered a compelling state interest.[7] See, e.g., Metromedia, Inc. v. City of San Diego, 453 U.S. 490, 507-08, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981) (plurality opinion) (aesthetics and traffic safety were substantial government interests); Beaulieu v. City of Alabaster, 454 F.3d 1219, 1234 (11th Cir.2006) (“The [c]ity’s interests in aesthetics and traffic safety are substantial but they are not compelling for present purposes.”); Solantic, LLC v. City of Neptune Beach, 410 F.3d 1250, 1267 (11th Cir.2005) (noting that traffic safety has not been recognized as a compelling state interest); Dimmitt v. City of Clearwater, 985 F.2d 1565, 1570 (11th Cir.1993) (stating that aesthetics and traffic safety were not compelling state interests); Cafe Erotica v. Florida Dept. of Transp., 830 So.2d 181, 187 (Fla. 1st DCA 2002) (stating that traffic safety has been traditionally recognized as a substantial government goal, citing Metromedia and Penn Cent. *1080 Transp. Co. v. New York City, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978)).
Even assuming the asserted interests are compelling, it is unclear how the statute advances those interests by allowing commercial and political speech at a volume “plainly audible” beyond twenty-five feet, but not allowing noncommercial speech to be heard at the same distance. See Montgomery, 69 So.3d at 1032 (“We fail to see how the interests asserted by the State are better served by the statute’s exemption for commercial and political speech.”). The State simply argues that noncommercial vehicles are more dangerous to the public because they are ubiquitous. This argument, however, fails to explain how a commercial or political vehicle amplifying commercial or political messages audible a mile away is less dangerous or more tolerable than a noncommercial vehicle amplifying a religious message audible just over twenty-five feet away from the vehicle. Further, the statute protects commercial speech to a greater degree than noncommercial speech; commercial speech, however, is generally afforded less protection. See U.S. v. Edge Broad. Co., 509 U.S. 418, 430, 113 S.Ct. 2696, 125 L.Ed.2d 345 (1993) (noting that commercial speech is afforded less protection than other forms of speech); see also Board of Trustees of State Univ. of N.Y. v. Fox, 492 U.S. 469, 477-78, 109 S.Ct. 3028, 106 L.Ed.2d 388 (1989) (“Our jurisprudence has emphasized that ‘commercial speech [enjoys] a limited measure of protection, commensurate with its subordinate position in the scale of First Amendment values,’” quoting Ohralik v. Ohio State Bar Ass’n, 436 U.S. 447, 456, 98 S.Ct. 1912, 56 L.Ed.2d 444 (1978)). Accordingly, we find that the statute is an unreasonable restriction on First Amendment rights. Likewise, the restriction of the constitutionally protected right to amplify sound, despite the State’s acknowledgement that this level of noise is tolerable and safe if the source is a commercial or political vehicle, is not narrowly tailored to achieve the government’s interests in improving traffic safety and protecting the citizenry from excessive noise. Thus, we also find that the statute is unconstitutionally overbroad because it restricts the freedom of expression in a manner more intrusive than necessary. We now proceed with a discussion of whether severance of the offending provisions is an appropriate remedy in this situation.
Severability
“Severability is a judicially created doctrine which recognizes a court’s obligation to uphold the constitutionality of legislative enactments where it is possible to remove the unconstitutional portions.” Florida Dept. of State v. Mangat, 43 So.3d 642, 649 (Fla.2010) (citing Ray v. Mortham, 742 So.2d 1276, 1280 (Fla.1999)). It is “derived from the respect of the judiciary for the separation of powers, and is ‘designed to show great deference to the legislative prerogative to enact laws.’ ” Ray, 742 So.2d at 1280 (quoting Schmitt v. State, 590 So.2d 404, 415 (Fla.1991)). The portion of a statute that is declared unconstitutional will be severed if: “ ‘(1) the unconstitutional provisions can be separated from the remaining valid provisions, (2) the legislative purpose expressed in the valid provisions can be accomplished independently of those which are void, (3) the good and the bad features are not so inseparable in substance that it can be said that the Legislature would have passed the one without the other, and (4) an act complete in itself remains after the invalid provisions are stricken.’ ” Lawnwood Med. Ctr., Inc. v. Seeger, 990 So.2d 503, 518 (Fla.2008) (quoting Cramp v. Bd. of Pub. Instruction, 137 So.2d 828, 830 (Fla.1962)); see also Schmitt, 590 So.2d at 415. Here, the key determination is whether the over *1081 all legislative intent is still accomplished without the invalid provisions. See Martinez v. Scanlan, 582 So.2d 1167, 1173 (Fla.1991) (citing Eastern Air Lines, Inc. v. Dep’t of Revenue, 455 So.2d 311, 317 (Fla.1984)).
Section 316.3045(l)(a) prohibits individuals from amplifying sound inside their motor vehicles that is “plainly audible” more than twenty-five feet away from the vehicle. At first glance, the broad purpose of the statute could be accomplished absent the invalid provisions. The statute, however, was not intended to apply uniformly to all classes of vehicles or content; subsection (3) of the statute and legislative history clearly indicate that the Legislature intended to exempt commercial and political vehicles from the statute’s proscription. Severing the provision from the statute would expand the statute’s reach beyond what the Legislature contemplated. Accordingly, in striving to show great deference to the Legislature, this Court will not legislate and sever provisions that would effectively expand the scope of the statute’s intended breadth.[8] Cf. Holly v. Auld, 450 So.2d 217, 219 (Fla.1984) (noting that courts lack the power to construe an unambiguous statute to extend, modify, or limit its express terms or its reasonable implications).
CONCLUSION
Accordingly, for the reasons set forth above, we affirm the Second District’s declaration that the statute is invalid. Section 316.3045(l)(a) is an unreasonable restriction on the freedom of expression and is unconstitutionally overbroad, but is not unconstitutionally vague. Additionally, we find that severance of the constitutionally infirm provisions is not an appropriate remedy.
It is so ordered.
PARIENTE, LEWIS, and PERRY, JJ., concur.
POLSTON, C.J. and CANADY, J., concur in result.
QUINCE, J., concurs in result only.

. See art. V, § 3(b)(1), Fla. Const, (providing for mandatory review by this Court of decisions of district courts of appeal declaring invalid a state statute or provision of the state constitution). The Second District also certified a question of great public importance: "Is the 'plainly audible' language in section 316.3045( l)(a), Florida Statutes, unconstitutionally vague, overbroad, arbitrarily enforceable, or impinging on free speech rights?” Catalano, 60 So.3d at 1144. Thus, we also have jurisdiction based on the certified question of great public importance. See art. V, § 3(b)(4), Fla. Const.

. The Second District consolidated State v. Catalano, Case No. 2D 10-973, with State v, Schermerhorn, Case No. 2D10-974, on appeal and issued one opinion. Catalano, 60 So.3d at 1141. The only distinguishing feature between the two cases is that Catalano was issued a citation on November 13, 2007, and Schermerhorn's citation was issued on April 11, 2008. Catalano and Schermerhorn are now joined as appellees here.

. Judge Kelly only concurred with this portion of the opinion that discusses whether the circuit court departed from the essential requirements of the law by relying on Easy Way, 674 So.2d at 867, to conclude section 316.3045(1 )(a) was unconstitutionally vague and overbroad. Catalano, 60 So.3d at 1147 (Kelly, J., concurring specially). Associate Judge Raiden concurred with the opinion, but also wrote separately that, although he was not positive section 316.3045(l)(a) was imper-missibly vague, he joined the majority opinion because subsection (b) of the statute suffers constitutional infirmity as it “permits citations, at least 'in areas adjoining churches, schools, or hospitals,’ for sound that is ‘louder than necessary for the convenient hearing by persons inside the vehicle.’ ” Catalano, 60 So.3d at 1147 (Raiden, J., concurring).

. The State suggests that Catalano and Schermerhorn do not have the requisite standing to facially challenge the constitutionality of the statute for vagueness. Litigants may not successfully challenge the constitutionality of a statute for vagueness or complain of its vagueness as applied to the hypothetical conduct of others “[i]f the record demonstrates that a defendant has engaged in some conduct clearly proscribed by the plain and ordinary meaning of the statute.” See State v. Brake, 796 So.2d 522, 526-27 (Fla. 2001) (citing McKenney v. State, 388 So.2d 1232, 1233 (Fla.1980) ("A person whose conduct clearly falls within the statute’s prohibition cannot reasonably be said to have been denied adequate notice.”)). Here, due to the procedural posture of the case, the record does not clearly demonstrate whether Catala-no and Schermerhorn engaged in clearly proscribed conduct. Nevertheless, their standing is not determinative as we find the statute is not unconstitutionally vague.

. Although we find that the statutory language sufficiently notifies citizens of the proscribed conduct, the United States Supreme Court has also noted that an administrative regulation can save a vague statute. See Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 504, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982). Here, as required by subsection (4), the Department of Highway Safety and Motor Vehicles (DMV) promulgated Florida Administrative Code Rule 15B-13.001. Pursuant to the rule, a violation of section 316.3045(l)(a) occurs when an individual’s vehicle produces sound that can be "clearly heard” more than twenty-five feet away by a law enforcement officer who has a direct line of sight and hearing to the motor vehicle producing the sound, using his or her normal auditory senses, without any enhancements or hearing aid. Additionally, the administrative regulation notes that an officer need not determine particular words or phrases, or the name of any song or artist; the detection of a rhythmic bass reverberating sound is sufficient. Thus, any lingering doubt as to what constitutes a violation of the statute is clarified by the administrative regulation.

. Litigants need not meet the traditional requirement of standing when challenging the constitutionality of a statute on the grounds of overbreadth. See Broadrick v. Oklahoma, 413 U.S. 601, 612, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). A litigant whose own speech or conduct is clearly proscribed is permitted to challenge a statute on its face on the ground that the rights of nonparties may be unconstitutionally inhibited. See Montgomery, 69 So.3d at 1029 (quoting Bd. of Airport Comm’rs v. Jews for Jesus, Inc., 482_ U.S. 569, 574, 107 S.Ct. 2568, 96 L.Ed.2d 500 (1987)). This is so because the existence of the statute may cause others not before the court to refrain from constitutionally-protected speech or expression rather than undertake to have the law declared partially invalid. See Montgomery, 69 So.3d at 1029 (citing Brockett v. Spokane Arcades, Inc., 472 U.S. 491, 503, 105 S.Ct. 2794, 86 L.Ed.2d 394 (1985), and Broadrick, 413 U.S. at 612, 93 S.Ct. 2908).

. We have previously recognized that there is a compelling state interest in highway safety. See State v. Bender, 382 So.2d 697, 699 (Fla.1980) ("[T]here is a compelling state interest in highway safety that justifies the state legislature to allow suspension of a driver’s license for failure to take a breathalyzer or blood alcohol test.”) (citing Mackey v. Montrym, 443 U.S. 1, 99 S.Ct. 2612, 61 L.Ed.2d 321 (1979)); see also Sambrine v. State, 386 So.2d 546, 548 (Fla.1980). Bender and cases from the district courts of appeal that acknowledge this compelling interest, however, involve a defendant’s failure to take a breathalyzer or blood alcohol test in situations where the driver may have been under the influence of alcohol. See Kurecka v. State, 67 So.3d 1052, 1060 n. 3 (Fla. 4th DCA 2010); Conahan v. Dep’t of Highway Safety and Motor Vehicles, 619 So.2d 988, 990 (Fla. 5th DCA 1993); State v. Demarzo, 453 So.2d 850, 853 (Fla. 4th DCA 1984). Here, much like the cases cited above which do not find traffic safety to be a compelling state interest, the proscribed conduct involves an individual’s freedom of expression as it relates to safety on public thoroughfares. Nevertheless, the level of import of the State’s interest here does not change our conclusion on the constitutionality of the statute.

. Additionally, in 1990, the same year that House Bill 1383, now codified as section 316.3045, was filed, Senate Bill 2274 was filed and also sought to restrict "sound amplification from within motor vehicles.” Fla. S.B. 2274 (1990). Senate Bill 2274 exempted "a vehicle used for advertising” and "a vehicle used in a parade or other special event.” Senate Bill 2274 did not propose an exemption for political speech. House Bill 1383 contained the exemptions which eventually became the law. Fla. H.B. 1383 (1990). Thus, it is likely that the invalid provisions were crucial to the enactment of section 316.3045.