[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 20-10791
Non-Argument Calendar

————————————————

D.C. Docket No. 0:17-cv-60009-DPG

ERIC WATKINS,

                                        Plaintiff - Appellant,

versus

OFFICER SHIELDS,
Fort Lauderdale Police Department,
OFFICER SCHRIDER,
Fort Lauderdale Police Department,
RIVERLAND PARK, CARABEO,
950 SW 27th Avenue
Fort Lauderdale, FL 33312,

                                        Defendants - Appellees,

RANGER TRILLO,

                                        Defendant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(August 10, 2021)

Before ROSENBAUM, LAGOA, and BRASHER, Circuit Judges.

PER CURIAM:

Eric Watkins, proceeding *pro se*, appeals the district court's grant of summary judgment against him on his 42 U.S.C. § 1983 civil-rights action for violations of his rights under the First, Fourth, Fifth, and Fourteenth Amendments. After careful review, we vacate the grant of summary judgment on Watkins's Fourth Amendment claim, but we affirm the judgment in all other respects.

**I.**

We present the relevant facts in the light most favorable to Watkins.[1] On March 14, 2013, Watkins was parked in Riverland Park's parking lot, playing music from his car stereo system. A park ranger approached and asked him to turn off the music because of park rules against playing amplified sound. Watkins refused.

The ranger radioed law enforcement, and Officers Shields and Schrider of the Fort Lauderdale Police Department arrived. They ordered Watkins to turn the music

_____

[1] At summary judgment, "[w]e view the evidence and all factual inferences therefrom in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in favor of the non-movant." *Alston v. Swarbrick*, 954 F.3d 1312, 1317 (11th Cir. 2020).

off, stating that amplified sound was prohibited by park rules. Watkins complied and shut off the music. Shields then ordered Watkins to get in his car and leave the park, warning him that if he ever returned to the park he would be arrested for trespass. Watkins got in his car and left.

After leaving, Watkins drove around the park and pulled up by Shields, who was parked outside the park. Watkins asked him for the case number for the trespass warning. Shields instructed Watkins to get out of the road and to pull into the park where they could talk. Watkins did so, and both he and Shields exited their cars. Watkins again asked for the case number and stated that he intended to challenge the permanent trespass warning with Shields's supervisor. Shields became angry and told Watkins he was under arrest for trespass after warning.[2] Schrider assisted in the arrest.

## II.

In a second amended complaint, Watkins alleged, in relevant part, that Officers Shields and Schrider violated (1) his Fourth Amendment rights by arresting him without probable cause for trespass, (2) his due-process right, under the Fifth and Fourteenth Amendments, to patronize the public park by trespass-warning him from ever returning to the park, and (3) his First Amendment rights to freedom of

---

[2] Shields and Schrider dispute these events, contending that Watkins reentered the park on his own, loudly playing music from his car stereo. We must credit Watkins's version of events at summary judgment, however.

3

speech and expression at a public park by enforcing an unconstitutional prohibition on amplified sound. He also brought a similar First Amendment claim against Carabeo in his official capacity, purportedly as manager of Riverland Park.

After discovery, the defendants filed a joint motion for summary judgment. Shields and Schrider argued that they did not violate Watkins's constitutional rights and were entitled to qualified immunity. Carabeo asserted that he could not be held liable because he was not personally involved in or aware of the events at Riverland Park, he was not a Riverland Park manager, and he had no role in drafting or revising the City of Fort Lauderdale Parks Rules and Regulations ("Park Rules"). In a response, Watkins argued his claims and asserted that he intended Carabeo to be a placeholder for the City of Fort Lauderdale. The defendants filed a reply.

In a report and recommendation ("R&R"), a magistrate judge recommended that the district court grant the defendants' motion for summary judgment. The magistrate judge first concluded that any claim based on Watkins's First Amendment rights failed because the regulation at issue, Park Rule 4.5, was a reasonable and content-neutral time, place, and manner restriction.

The magistrate judge also rejected Watkins's other claims, stating that he knowingly returned to the park immediately after being trespass-warned. Regarding Watkins's claim that he was simply "following orders from Defendant Shields when he returned to the Park," the magistrate judge observed that Watkins "has been found

4

to have frequently brought frivolous and vexatious claims, often involving trespass, in this Court, and that he has been sanctioned for continuing to do so." So according to the magistrate judge, "If Plaintiff returned to the Park under any circumstances immediately after he was given a trespass warning, he did so knowingly and at his own peril." Finally, the magistrate judge found that Shields and Schrider were entitled to qualified immunity.

The district court adopted the R&R over Watkins's objections and granted the defendants' motion for summary judgment. This appeal followed.

## III.

We review the grant of summary judgment *de novo*, construing the evidence and drawing all reasonable inference in favor of the nonmoving party. *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013). We may not make credibility choices, and we therefore must credit the nonmoving party's version of the facts even if we believe the evidence is "of doubtful veracity." *Id.*

We construe *pro se* briefs liberally. *Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008). We may affirm the judgment on any ground supported by the record. *Big Top Koolers, Inc. v. Circus-Man Snacks, Inc.*, 528 F.3d 839, 844 (11th Cir. 2008).

## IV.

5

We begin with the § 1983 claims against Officers Shields and Schrider, who raised the defense of qualified immunity. Qualified immunity generally protects government officials from individual liability for their on-the-job conduct unless they "violate[] clearly established statutory or constitutional rights of which a reasonable person would have known." *Piazza v. Jefferson Cnty.,* 923 F.3d 947, 951 (11th Cir. 2019) (quotation marks omitted).

**A.**

Watkins first claims that Shields and Schrider violated his clearly established First Amendment right to play amplified sound in a public forum by enforcing Park Rule 4.5, which Watkins believes is unconstitutional.

According to Park Rule 4.5, "No person or group shall play or operate any sound amplification device including radios, television sets, turn tables, tape decks, public address systems, amplified musical instruments, portable generators, or any other loud noise generating device which disturbs other persons." Park Rule 11.3 provides that any person who violates any of the rules "shall be ordered to leave all City of Fort Lauderdale parks . . . for a minimum 24-hour period, and if he fails to leave, he will be subject to arrest and prosecution for trespassing or prosecuted under other ordinances."

Shields and Schrider are entitled to qualified immunity on this claim. Watkins's conduct fell within Park Rule 4.5's prohibition because he used a sound

amplification device—his car stereo system[3]—inside Riverland Park.  Although

Watkins argues that Park Rule 4.5 violates the First Amendment, "[p]olice are

charged to enforce laws until and unless they are declared unconstitutional."

*Michigan v. DeFillippo*, 443 U.S. 31, 38 (1979).  At the time of the incident giving

rise to Watkins's arrest, Park Rule 4.5, or something materially identical, "had not

been declared unconstitutional, and therefore it could not have been apparent to [the

officers] that [they were] violating [Watkins's] constitutional rights" by ordering

him to turn off his music and leave the park.  *Cooper v. Dillon*, 403 F.3d 1208, 1220

(11th Cir. 2005).

Watkins relies on the Florida Supreme Court's decision in *State v. Catalano*,

104 So. 3d 1069 (Fla. 2012), but in that case the amplified-sound regulation was

held unconstitutional because it was content based, carving out more favorable rules

for "motor vehicles used for business or political purposes."  *Id.* at 1078–79.  The

regulation was therefore subject to strict scrutiny.  *Id.*  In contrast, Park Rule 4.5 is

a content-neutral sound ordinance directed at limiting sound emanating within and

around parks, which is a substantial interest of the city.  *See Ward v. Rock Against*

*Racism*, 491 U.S. 781, 784, 803 (1989) (stating that content-neutral sound

regulations are valid if they are narrowly tailored to serve a significant governmental

---

[3] Despite Watkins's assertions to the contrary, a car stereo system is plainly a "sound amplification device" within the meaning of Park Rule 4.5.

7

interest, such as "protecting its citizens from unwelcome noise," and leave open alternative channels of communication).  Watkins also cites to *Daley v. City of Sarasota*, 752 So. 2d 124 (Fla. Dist. Ct. App. 2000), but that case did not involve sound regulation in public parks.  And even assuming Park Rule 4.5 might fail *Ward*'s test for constitutionality, despite its valid goals and content neutrality, it is not "so grossly and flagrantly unconstitutional" that the officers should have known it was unconstitutional.  *DeFillippo*, 443 U.S. at 38.

Accordingly, Shields and Schrider are entitled to qualified immunity as to Watkins's § 1983 First Amendment claims.

**B.**

Watkins next asserts that Shield and Schrider violated his Fourth Amendment rights when they arrested him for trespass based on conduct authorized by Shields. Relatedly, he claims that these officers lacked the authority to issue a trespass warning in the first place.[4]

---

[4] Watkins's argument on this point is primarily statutory, but he also asserts in passing that the "[t]respass warning was invalid from the beginning because it was indefinite and hence illegally violated Plaintiffs due process right to patron the park."  We conclude that this passing reference, without any supporting legal authority or arguments, is not sufficient to raise a due process argument on appeal.  *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority.").

8

"[I]t is well established that [a] warrantless arrest without probable cause violates the Fourth Amendment and forms a basis for a section 1983 claim." *Carter v. Butts Cnty.*, 821 F.3d 1310, 1319 (11th Cir. 2016) (quotation marks omitted). But where probable cause supports an arrest, it bars a § 1983 unlawful-arrest claim. *Id.* "Probable cause to arrest exists if the facts and circumstances within the officer's knowledge, of which he has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Id.* (internal quotation marks omitted). We evaluate probable-cause determinations objectively—that is, without regard to the officer's subjective intentions—and under the totality of the circumstances. *See id.*

Watkins was arrested under a Fort Lauderdale ordinance prohibiting "trespass . . . on public property." Fort Lauderdale Code of Ordinances § 16-71(b)(7). "Trespass" includes "[e]ntering upon or refusing to leave any public property in violation" of lawfully enacted and promulgated regulations "where immediately prior to such entry, or subsequent thereto, such regulations are made known by the official charged with the security, care or maintenance of the property, his agent or a police officer." *Id.* § 16-71(c)(2). In addition, Florida state law criminalizes trespass on property other than a structure or conveyance—such as a public park—where a person, "without being authorized, licensed, or invited," "willfully enters

9

upon or remains" on the property "[a]s to which notice against entering or remaining is given . . . by actual communication to the offender." Fla. Stat. § 810.09(1)(a).

The record shows that a park ranger told Watkins that he was violating park rules by playing music inside Riverland Park through a sound-amplification device—his car stereo system. When Watkins refused to turn off the music, thereby continuing to violate park rules, the ranger notified police. Despite Watkins's views to the contrary, his conduct plainly violated Park Rule 4.5, so the park rules required that he be "ordered to leave . . . for a minimum 24-hour period," even if he was not actively violating park rules at the time he was ordered to leave. *See* Park Rule 11.3. The officers did just that, informing him that he was violating park rules and ordering him to leave the park.

We are not persuaded that the officers lacked the authority to issue a trespass warning for violating park rules or—more pertinent for purposes of qualified immunity—that the officers should have known they lacked that authority. Watkins asserts that the officers were required to have written authorization from Riverland Park to issue trespass warnings, claiming that this requirement derives from §§ 810.08 and 810.09. He is incorrect.

Section 810.08 governs trespass of a "structure or conveyance," while § 810.09 governs most other trespasses. Section 810.09 applies here because no structure or conveyance was involved. And in contrast to offenses under § 810.08,

10

§ 810.09 includes no requirement that the alleged trespasser "defied an order to leave communicated by the owner or authorized person." *R.C.W. v. Florida*, 507 So. 2d 700, 702 (Fla. Dist. Ct. App. 1987). The statute requires merely that "notice against entering or remaining is given . . . by actual communication to the offender," which is what Shields and Schrider provided. Fla. Stat. § 810.09(1)(a)(1). So at the very least, the relevant law was not so clearly established that the officers should have known that they lacked the authority to issue a trespass warning.

Turning to Watkins's arrest, the district court found that the officers had probable cause to arrest for trespass because, considering his prior litigation history, Watkins reentered the park "knowingly and at his own peril" immediately after being trespass-warned by the officers. But that finding effectively served as an impermissible credibility determination because it contradicted Watkins's version of the facts. *See Feliciano*, 707 F.3d at 1252.

Under Watkins's version of the facts, his reentry to the park was not unauthorized. *See Daniel v. Morris*, 181 So. 3d 1195, 1199 (Fla. Dist. Ct. App. 2015) ("Trespass to real property is the unauthorized entry onto another's real property."); *Coddington v. Staab*, 716 So. 2d 850, 851 (Fla. Dist. Ct. App. 1998) ("Trespass to real property has been defined as an unauthorized entry onto another's property."). Rather, according to Watkins, he reentered the park at the direction and

11

with the permission of Shields, under whose authority he had just been ordered to leave.

To the extent Watkins was simply following Shields's directions and not violating any other park rule, as Watkins claims he was, no reasonable officer in these circumstances could have believed that Watkins was trespassing. *See* Fla. Stat. § 810.09 (stating that a trespasser must have entered or remained "without being authorized, licensed, or invited"); *Pearson v. Ford Motor Co.*, 694 So. 2d 61, 69 (Fla. Dist. Ct. App. 1997) ("Consent is an absolute defense to an action for trespass."). Under Watkins's version of events—which we must credit, notwithstanding his history of bringing "frivolous and vexatious claims," as the magistrate judge observed—his reentry to the park was authorized.

Accordingly, we conclude that Shields and Schrider are not entitled to qualified immunity on this claim.

## V.

Finally, Watkins asserts that his § 1983 claim against Carabeo in his official capacity was, in actuality, a claim against the municipality of Fort Lauderdale.[5]

---

[5] We note that Watkins attempted to amend his complaint to add additional defendants, including the City of Fort Lauderdale and various City officials. But that motion was denied for reasons of futility and undue delay, and even liberally construing Watkins's briefing, we cannot discern any challenge to the reasons for that denial. So we must conclude that he has abandoned that issue. *See Sapuppo*, 739 F.3d at 680 (issues not raised on appeal are abandoned).

"When suing local officials in their official capacities under § 1983, the plaintiff has the burden to show that a deprivation of constitutional rights occurred as a result of an official government policy or custom." *Cooper*, 403 F.3d at 1221. However, "[o]nly those officials who have final policymaking authority may render the municipality liable under § 1983." *Id.* (quotation marks omitted).

Here, there is no evidence that Carabeo had any policymaking authority with respect to the Park Rules or that he had any personal involvement in the events at Riverland Park. In a declaration, Carabeo provided unrebutted testimony that he was not at Riverland Park on the day in question, that he has never been a Riverland Park ranger, and that he did not participate in the creation, drafting, or revision of the Park Rules. Accordingly, Carabeo is neither personally liable nor an official with final policymaking authority who "may render the municipality liable under § 1983." *Id.* We therefore affirm the district court's grant of summary judgment against Watkins on his § 1983 claim against Carabeo.

## VI.

In conclusion, we vacate the grant of summary judgment on Watkins's Fourth Amendment claim, and we remand for further proceedings consistent with this opinion. We affirm the district court's judgment in all other respects.[6]

---

[6] Watkins contends that the magistrate judge erred in granting the defendants' motion for an extension of time to file their motion for summary judgment. But Watkins did not timely request district-court review of the magistrate judge's decision, so he has waived appellate review

13

**AFFIRMED IN PART, VACATED AND REMANDED IN PART**.

---

of that order. *See Smith v. Sch. Bd. of Orange Cnty.*, 487 F.3d 1361, 1365 (11th Cir. 2007) ("[W]here a party fails to timely challenge a magistrate's nondispositive order before the district court, the party waive[s] his right to appeal those orders in this Court."); Fed. R. Civ. P. 72(a).